# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-1424-MSK

BELCARO GROUP, INC. d/b/a SHOPATHOME.COM, a Colorado corporation,

    Plaintiff,

v.

QUIBIDS, LLC, an Oklahoma limited liability company,
QUIBIDS HOLDINGS LLC, a Delaware limited liability company,
YTZ INTERNATIONAL INC., f/k/a PPX and a/k/a WSF MONETIZATION, a Canada corporation, and
RAPID RESPONSE MARKETING LLC, f/k/a XY7.COM and a/k/a XY7ELITE.COM, a Nevada limited liability company,

    Defendants.

## QUIBIDS DEFENDANTS'
## REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FOR
## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Through the vehicle of a response to a motion to dismiss, SAH now seeks to recast its Complaint to assert alternative theories with respect to its tortious interference claim. If SAH wishes to restate its theories of recovery, it should do so properly in the form of an amended complaint; otherwise its claims are moving targets. In any event, SAH's intentional interference theory fails to properly state a claim regardless of whether SAH is alleging that: (1) QuiBids is a party, via an agency relationship, to the contract with which QuiBids allegedly interfered; or (2) QuiBids was withholding payment to a third party (Turn Two) because of a commercial dispute over whether QuiBids was being wrongfully charged.

SAH's theory that Turn Two (as well as the other affiliate networks named as QuiBids' co-defendants) was authorized to act as QuiBids' agent by entering the purported Master

Agreement on QuiBids' behalf is inextricably intertwined with SAH's entire Complaint. The agency allegation forms the basis of SAH's personal jurisdiction theory (*see, e.g.,* Complaint at ¶¶ 8-9); its declaratory judgment theory (*see, e.g.*, *id.* at ¶¶ 15, 18, 24-29); and its intentional interference theory (*see, e.g.*, *id.* at ¶ 1 (asserting "claims against QuiBids for wrongfully interfering with SAH's contract with QuiBids' agent Turn Two Media")). SAH's attempt to reframe its lawsuit via a response to a motion to dismiss is improper and deprives QuiBids of the ability to fully defend itself. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (noting that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

Yet, even if the Court was to indulge SAH's argument that the Complaint alternatively alleged the intentional interference claim on the basis that QuiBids was not a party to the Turn Two Master Agreement by virtue of an agency relationship, this reformulated theory would still be unsustainable under the facts pled. This alternative theory supposes that QuiBids must pay an affiliate marketing network (Turn Two) for advertising charges that QuiBids maintains are fraudulent; or else QuiBids stands liable to SAH (essentially a sub-contractor of Turn Two) for an **intentional** tort. To be sure, SAH has an interest in maintaining the integrity of its alleged contract. Yet, SAH's interest must be weighed against QuiBids' interest in freedom of action, i.e., QuiBids withholding payment from Turn Two because it disputed the validity of the marketing charges. *See* Restatement (Second) of Torts § 766, cmt. c.; (Complaint at ¶¶ 22-23). SAH's theory is tantamount to saying that any time a person withholds payment from a contractor due to a dispute over the validity of charges, that person would have committed an

intentional tort against any subcontractor that the prime contractor chose not to pay following the dispute. As stated by the United States District Court for the Western District of North Carolina,

> This Court cannot agree that such facts are legally sufficient to sustain the 'intentional inducement' prong of a claim of intentional interference with contract. To hold otherwise would be to proclaim that any time a party, who had entered into a contract with another person knowing that that person would enter into a subcontract, intentionally failed to perform or withheld performance, that party would [be] subject to, not only a contract claim, but a tort claim for interfering with the contractor/ subcontractor contractual relationship.

*City of Gastonia v. Balfour Beatty Const. Corp.*, 222 F. Supp. 2d 771, 776 (2002).[1] QuiBids cannot be held liable for intentional interference under Colorado law by endeavoring to protect itself from fraudulent charges, even if there is an unintended impact on SAH. If SAH has a claim at all, its claim sounds in contract, not tort.

## ARGUMENT

**I. The Court should disregard SAH's attempt to reformulate its claims through a brief in response to the motion to dismiss, and SAH's intentional interference claim should be dismissed on the basis that the facts, as alleged by SAH, do not establish that QuiBids interfered with a contract between SAH and a third party.**

SAH is critical of QuiBids for seeking dismissal of the tortious interference claim on the basis of SAH's categorical assertion that Turn Two was acting as QuiBids' agent. But as SAH recognizes, the facts in the Complaint must be taken as true for the purpose of a motion to dismiss for failure to state a claim. (Doc. No. 20, SAH Response at 6.) SAH's agency theory was not originally conceived as an alternative theory. SAH clearly states that it is asserting "claims against QuiBids for wrongfully interfering with SAH's contract with QuiBids' agent

---

[1] Like Colorado, North Carolina follows the Restatement (Second) of Torts, § 766. *See Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202, 1216 (M.D.N.C. 1996).

Turn Two Media . . . ." (Complaint at ¶ 1; *see also id.* at ¶ 14 ("SAH has advertised on behalf of QuiBids through agreements entered into by third parties, including . . . Turn Two Media, who, on information and belief, were acting as agents for QuiBids.").) Even SAH's declaratory judgment claim is grounded in its theory that YTZ, RRM and Turn Two were acting as QuiBids' agents when they allegedly agreed, on behalf of QuiBids, to QuiBids being charged for conversions that SAH did not in fact procure. (*See, e.g.,* Complaint at ¶ 15 ("Turn Two Media and SAH executed a 'Master Terms and Conditions' agreement . . . whereby SAH agreed to promote Turn Two Media's offers, including offers for which Turn Two Media was 'acting on behalf of third part[ies]'"); ¶ 18 ("On information and belief . . . Turn Two Media have made offers available to SAH on behalf of QuiBids"); ¶¶ 25-29 (describing how SAH's Master Agreements with the affiliate networks allegedly absolve SAH for charging for conversions it did not procure because the networks supposedly agreed to such charges on QuiBids' behalf); p. 13 (requesting a declaratory judgment "that SAH's affiliate marketing procedures were agreed to and do not give rise to any liability to QuiBids").)

The respective Master Agreements between SAH and YTZ, RRM, and Turn Two are virtually identical.[2] Each contains provisions stating that YTZ, RRM, and Turn Two were "acting on behalf of third party advertising agencies, marketers and others . . . ." SAH even specifically pleads that Turn Two was acting as an agent for QuiBids regarding the procurement of affiliate marketing services (*id.* at ¶¶ 1, 14), going so far as to seek to justify its behavior based on the various provisions in its respective Master Agreements (*id.* at ¶¶ 25-27). But never

---

[2] Notably, SAH's agreement with Turn Two selects New York as the forum for disputes between SAH and Turn Two, which may explain why Turn Two was not named in this suit.

does SAH specifically plead facts that would explain why Turn Two might not be an agent of QuiBids for purposes of the tortious interference claim when Turn Two, YTZ and RRM are *allegedly* agents of QuiBids for purposes of SAH's other claims.

To support its claim that QuiBids intentionally interfered with the Turn Two Master Agreement, SAH must allege that the contract was between SAH and a third party, not between SAH and QuiBids. *See MDM Group Assoc., Inc. v. CX Reinsurance Co., U.K.*, 165 P.3d 882, 886 (Colo. App. 2007) ("a defendant cannot be liable for interference with its own contract."). Contrary to SAH's assertion, the agency question is embodied in the substantive element that the interference must be with a contract "between another and a third person . . . ." *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 170 n.12 (Colo. 1993). Because intentional interference "is premised on the existence of a contract between a plaintiff and a third party," it is the plaintiff's burden to prove that "the defendant, not a party to the contract, induces the third party to breach the contract . . . ." *Id.* at 170 (noting also that "the facts of this case do not satisfy the **third-party element** of the tort") (emphasis added). Nowhere does SAH alternatively plead that Turn Two was not acting as an agent of QuiBids when Turn Two executed the Master Agreement. SAH's failure to plead facts supporting its tortious interference claim requires that the claim be dismissed. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint.").

If SAH wishes to reform its theory of liability in an attempt to cure the defects in the Complaint, it must do so in the form of an amended pleading, not in its response to QuiBids' motion to dismiss. *See id.* ("It is axiomatic that the complaint may not be amended by the briefs

in opposition to a motion to dismiss."); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (same).  However, it is not clear that SAH can successfully assert its alternative theories.  SAH's declaratory judgment claims rely on the theory that Turn Two (and PPX and RRM) agreed on behalf of QuiBids to QuiBids being charged for conversions that SAH did not in fact procure.  (*See, e.g.,* Complaint at p. 13 (seeking declaration that "SAH's affiliate marketing procedures were agreed to").)  Without pleading alternative facts to support the independent and incompatible claim of tortious interference, it is improper for SAH to: (1) rely upon the execution of the identical Master Agreements to support its claim for declaratory relief; (2) plainly assert its belief that Turn Two (as well as the other affiliate networks) was acting as an agent for QuiBids; and (3) all the while attempt to ignore those allegations and the law stating that a principal cannot intentionally interfere with its own contract.  QuiBids cannot be required to assume SAH is pleading facts which are not in its Complaint in order to justify SAH's claims against it.

If SAH truly believes that QuiBids' relationship with Turn Two was potentially different from its relationship with YTZ and RRM, it must be required to plead alternative facts that make possible its alternative theory for legal liability.  *See Kwan v. Schlein,* 246 F.R.D. 447, 451-52 (S.D.N.Y. 2007) ("each alternative theory must itself be sufficient to state a claim, and factual allegations must be enough to raise a right to relief above the speculative level") (quotations and citations omitted)); *S.E.C. v. Patel*, CIV. 07-CV-39-SM, 2009 WL 3151143 (D.N.H. Sept. 30, 2009) ("To the extent the [Plaintiff] wishes to rely on this alternate theory for its eighth claim of relief, it must plead the factual allegations to support it") (quotations and citations omitted)); *Leong v. Cellco P'ship*, CIV.A. 12-0711, 2013 WL 1209094, n.13 (W.D. La. Mar. 21, 2013) ("**A**

**right to plead alternative theories does not obviate the obligation to provide factual support for each theory.**") (emphasis added)). SAH's attempt to reformulate its claims via a brief in opposition to a motion to dismiss should be disregarded, and SAH's intentional interference claim should be dismissed on the basis that the facts, as alleged by SAH, do not establish that QuiBids interfered with a contract between SAH and a third party.

II.   **SAH has not alleged facts to support its conclusion that the alleged interference by QuiBids was "both intentional and improper" or that QuiBids' had knowledge that its act of withholding payment from Turn Two would cause Turn Two to withhold payment from SAH.**

In response to QuiBids' Motion to Dismiss, SAH appears to shift its theory regarding the intent element of the alleged tort to an idea that QuiBids had "knowledge" that the purported interference with the SAH-Turn Two contract was certain to occur as a result of QuiBids withholding payment to Turn Two due to QuiBids' dispute over the validity of the charges. (Doc. No. 20, SAH Response at 10 (quoting *Slater Numismatics, LLC v. Driving Force, LLC*, __ P.3d __, 2012 COA 103, 2012 WL 2353847, at *9).) The immediate problem with this revised theory is that the Complaint does not allege facts indicating that QuiBids knew that the purported interference "was certain or substantially certain to occur as a result of" QuiBids' withholding of payment to Turn Two on the disputed charges. *See Slater Numismatics*, at *9. Moreover SAH's new reliance on a "knowledge" theory, rather than a more traditional purpose theory, increases the extent to which SAH must establish that QuiBids' actions were "improper," and SAH failed to plead such facts.

Tortious interference is an "intentional tort." *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195 (Colo. App. 2009). For an alleged interference to be actionable, "the

interference must be both intentional **and improper**." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 501 (Colo. 1995) (emphasis added). To achieve the balance between protecting the integrity of contracts and preserving the personal and social interests of third parties, "a plaintiff must show more than that a defendant intentionally interfered with an existing contract . . . . There must also be proof that such interference was 'improper.'" *Harris Group*, 209 P.3d at 1196.

Comments to the Restatement (Second) of Torts suggest that, as a practical matter, the relationship between the intent element and the improper element are inversely proportional. When a plaintiff relies principally on "knowledge" of the alleged tortfeasor to establish the intent element (rather than a "purpose" approach), the focus of analysis shifts more toward the extent to which the action was improper. *See* Restatement (Second) of Torts § 766, cmt. j ("The fact that this interference with the other's contract was not desired and was purely incidental in character is, however, a factor to be considered in determining whether the interference is improper."); *id.* at § 767, cmt. d ("Intent alone, however, may not be sufficient to make the interference improper, especially when it is supplied by the actor's knowledge that the interference was a necessary consequence of his conduct rather than by his desire to bring it about."). As this Court stated in *Kennedy v. Williams R. Hudon, Inc.*, 659 F. Supp. 900 (D. Colo. 1987):

> If the actor is not acting criminally nor with fraud or violence or other means wrongful in themselves but is **endeavoring to advance some interest of his own**, the fact that he is aware that he will cause interference with the plaintiff's contract may be regarded as such a **minor and incidental consequence and so far removed from the defendant's objective** that as against the plaintiff the interference may be found to be not improper.

*Id.* at 904 (quoting Restatement (Second) of Torts § 766, cmt. j) (emphasis added).

The facts alleged in SAH's Complaint do not support SAH's conclusory assertion that QuiBids "intentionally" induced Turn Two to breach the purported contract between Turn Two

and SAH, whether SAH wishes to establish intent by virtue of "purpose" or by "knowledge." *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (a court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable"). SAH has not alleged that QuiBids asked Turn Two to withhold payment. Nor did SAH allege facts suggesting that QuiBids had any knowledge or awareness that the purported interference with the SAH-Turn Two contract was "certain or substantially certain to occur as a result of" QuiBids' withholding of one payment to Turn Two on disputed charges. *See Slater Numismatics*, 2012 WL 2353847, at *9.

Yet, SAH does allege that there is a genuine controversy between QuiBids and SAH (*see* Complaint at ¶ 21 ("There is a real and actual controversy between SAH and QuiBids regarding whether SAH has violated any law"); and that QuiBids withheld payment to advance its own interest (*id.* at ¶ 22 ("QuiBids was refusing to pay Turn Two Media for SAH's services because of what QuiBids claimed to be fraudulent activity by SAH."))). Moreover, Turn Two's purported action of withholding payment to SAH does not advance any interest of QuiBids. QuiBids had its own motivation for refusing to pay Turn Two for charges it maintains were fraudulent, but QuiBids gains nothing by Turn Two's alleged failure to pay SAH.

These facts as alleged by SAH are plainly inapposite to a claim for tortious interference with contract. By SAH's own allegations, it is clear that QuiBids' act to withhold payment to Turn Two was borne out of QuiBids' desire to protect itself from wrongful charges, which is not an improper act. "The essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the

**unintended effect of deterring the third person from dealing with the other**." *Kennedy*, 659 F. Supp. at 904 (emphasis added).³

Finally, SAH has not alleged facts supporting its conclusory assumption that QuiBids had knowledge of the purported Turn Two Master Agreement. The "knowledge of contract" element involves more than just a passing awareness of the existence of a relationship between Turn Two and SAH. "To be subject to liability [for intentional interference with contract], the actor must have knowledge of the contract with which he is interfering **and of the fact that he is interfering with the performance of the contract**." Restatement (Second) of Torts § 766, cmt. i (emphasis added). Of course, the need for a plaintiff to establish the defendant's knowledge that the defendant was interfering with the performance of the contract is a natural corollary of the intent element if the plaintiff is seeking to meet the intent element by virtue of the defendant's knowledge that the interference was certain or substantially certain to occur as a result of the defendant's actions. SAH's Complaint fails to set forth facts in support of this and the above stated elements.

## CONCLUSION

For the reasons stated above and in QuiBids' Motion to Dismiss, SAH's intentional interference claim should be dismissed for failure to state a claim upon which relief can be granted.

---

³ SAH attempts to distinguish *Kennedy* on the basis that it was a decision following a grant of summary judgment instead of a dismissal. However, QuiBids cited *Kennedy* for the propositions of law that it expressed. Those same propositions of law can be applied to the facts alleged in SAH's Complaint, taken as true for the purpose of the motion to dismiss.

Respectfully submitted,

s/ Gregory T. Metcalfe
Gregory T. Metcalfe, OK Bar # 19526
John M. "Jake" Krattiger, OK Bar # 30617
**GABLEGOTWALS**
One Leadership Square, Suite 1500
211 North Robinson
Oklahoma City, OK  73102-7101
(405) 235-5500 | (405) 235-2875 (fax)
GMetcalfe@gablelaw.com
JKrattiger@gablelaw.com

Steven Janiszewski
**Riggs Abney Neal Turpen Orbison & Lewis**
7979 E Tufts Avenue Parkway, Suite 1300
Denver, CO 80237
(303) 298-7392 | (303) 298-1319 (fax)
sjaniszewski@riggsabney.com

**Attorneys for Defendants
QuiBids LLC & QuiBids Holdings LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jennifer Ann Golinveaux
Email: jgolinveaux@winston.com

John (Jack) Markham Tanner
Email: jtanner@fwlaw.com

Michael Stuart Elkin
Email: melkin@winston.com

s/ Gregory T. Metcalfe
Gregory T. Metcalfe