IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-1424-MSK-BNB

BELCARO GROUP, INC. d/b/a SHOPATHOME.COM, a Colorado Corporation,

      Plaintiff,

v.

QUIBIDS, LLC, an Oklahoma limited liability company,
QUIBIDS HOLDINGS LLC, a Delaware limited liability company,
YTZ INTERNATIONAL INC. f/k/a PPX and a/k/a WSF MONETIZATION, a Canada corporation, and
RAPID RESPONSE MARKETING LLC f/k/a XY7.COM and a/k/a XY7ELITE.COM, a Nevada limited liability company.

      Defendants.

---

## DEFENDANT YTZ INTERNATIONAL INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2), 12(b)(5) and 12(b)(6)

---

      Defendant YTZ International Inc. ("YTZ"), through counsel, moves this Court to dismiss Plaintiff Belcaro Group, Inc. d/b/a SHOPATHOME.COM's ("Belcaro") Second and Third Claims for Relief as to YTZ for lack of personal jurisdiction, for insufficient service of process, and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5) and 12(b)(6).

      As demonstrated below, YTZ is not a party to the November 16, 2010, Master Terms and Conditions Agreement attached as Exhibit 1 to the Complaint (the "Master Agreement") and thus not bound by that agreement's jurisdictional and service provisions.  Belcaro's claims against YTZ are apparently based on Belcaro's incorrect belief that YTZ is formerly known as

PPX and also known as WSF Monetization ("WSF").  Compl. ¶ 5.  YTZ is not affiliated with either PPX or WSF and has no obligation to indemnify Belcaro.

Moreover, this Court has neither general nor specific personal jurisdiction over YTZ. Further, Belcaro's claims against YTZ for breach of contract and declaratory relief fail to state a claim against YTZ upon which relief can be granted.

### D.C. Colo. L. Civ. R. 7.1(A) Certification

YTZ certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(A), counsel discussed the grounds for this motion and the relief requested with Belcaro's counsel on August 8, 2013, and based thereon advises the Court that Belcaro opposes the motion.

### I. Relevant Background Facts and Procedural History

### A.      YTZ Lacks any Affiliation with PPX.

YTZ is a Canadian company incorporated under the laws of Ontario, Canada and operates an internet affiliate marketing network.  YTZ contracts with other internet-based companies to drive traffic via advertising to its clients' websites.  YTZ generates revenue on a "cost-per-action" model in which the consumer arrives at YTZ's client's website through an advertising link hosted by YTZ and executes a pre-defined action—usually, a purchase of the client's product.  Once the consumer completes the pre-defined action, YTZ charges its client for the directed traffic.

Like YTZ, Belcaro is an internet affiliate marketing company that generates revenue by driving new traffic to merchants' websites.  Belcaro appears to have contracted with several affiliate providers to obtain services similar to YTZ's.  YTZ, however, is neither an affiliate provider to Belcaro nor a party to any contract to indemnify Belcaro.

Belcaro's claims against YTZ are based entirely upon the Master Agreement. Compl. Ex. 1 p. 2. The Master Agreement is an agreement between PPX and Belcaro. Compl. Ex. 1 p. 2. YTZ has never entered into any written contract with Belcaro and is not a party to the Master Agreement. Attachment A, Declaration of Sam Dennis ¶¶ 3-4. Before this lawsuit, YTZ had never seen the Master Agreement nor the other "Master Terms and Conditions Agreements" submitted as Exhibits 2 and 3 to the Complaint. Dennis Decl. ¶ 4. YTZ did not even know of the existence of such contracts. *Id.*

Moreover, when PPX and Belcaro entered into the Master Agreement on November 16, 2010, YTZ did not exist in its present form. Dennis Decl. ¶ 5. On November 16, 2010, YTZ was a "shell company" named "2139879 Ontario Limited," that was unused and non-operating. Dennis Decl. ¶ 5. 2139879 Ontario Limited did not become operational and conducted no business until after July 19, 2012, when it changed its name to YTZ International, Inc. *Id.* ¶ 5.

The Master Agreement was not executed by any agent of YTZ, and YTZ has never assumed any rights or obligations of any party to the Master Agreement. PPX executed the Master Agreement through Tobiah Adams, its "Media Buyer." Compl. Ex. 1 p. 2. Although Mr. Adams is now a YTZ employee, he was not a YTZ employee on November 16, 2010, and has never had authority to bind YTZ to contractual obligations – particularly while employed by PPX. Dennis Decl. ¶ 6.

YTZ is not a successor to PPX. Dennis Dec. ¶ 7. YTZ has neither acquired any of PPX's assets nor assumed any of PPX's obligations—including those PPX may owe Belcaro. *Id.* YTZ is not affiliated with PPX and has not held itself out as or conducted business as PPX. *Id.* PPX is not an agent of YTZ, and has never had authority to bind YTZ to contractual obligations.

-3-

*Id.* Moreover, YTZ has never represented to Belcaro, either explicitly or implicitly, that YTZ was affiliated with PPX or that PPX had authority to act as YTZ's agent in any respect. *Id.*

Similarly, YTZ is not "also known as" WSF as Belcaro alleges. Dennis Decl. ¶ 8. YTZ has no knowledge of any affiliation between WSF and PPX. *Id.* YTZ has never represented to Belcaro, either explicitly or implicitly, that YTZ was affiliated with WSF or that WSF had authority to act as YTZ's agent for any purpose. *Id.*

Moreover, YTZ is not related to any other party to this suit. YTZ has never entered into any contract with Defendants QuiBids LLC or QuiBids Holdings, LLC (collectively, "QuiBids"). Dennis Decl. ¶ 9. YTZ has neither requested nor received authority from QuiBids to act on its behalf or to bind QuiBids in any way. *Id.* YTZ is not a party to any contract between Belcaro and its apparent business partners QuiBids, PPX, Defendant Rapid Response Marketing, LLC ("RRM") and/or nonparty Turn Two Media. *Id.*

**B.      YTZ's Absence of Contact with the State of Colorado.**

YTZ has no substantial contacts with the state of Colorado. YTZ's business is located in Ontario, Canada. Dennis Decl. ¶ 10. All of YTZ's employees, officers, and directors are located in Canada. *Id.* YTZ is incorporated in Ontario and has never been listed, authorized, or registered to do business, or appointed an agent for service of process in Colorado. *Id.* ¶ 12. YTZ has never permanently stationed any employee in Colorado, has not held company meetings in Colorado, and has not maintained business records in Colorado. *Id.* ¶ 11. Similarly, YTZ has never had an office or other place of business within Colorado, has never owned real or personal property in Colorado, has never negotiated or entered into a written contract in Colorado, and has never had a bank account or paid taxes in Colorado. *Id.* ¶ 12. YTZ does not

-4-

direct marketing or advertising campaigns toward Colorado, does not advertise in Colorado, and is not aware of any of its clients residing in Colorado.  *Id.* ¶ 13.  Although YTZ's website is accessible nationally, YTZ no more intentionally directs business into Colorado over the internet than to any other state.  *Id.*

In short, YTZ has no substantial, continuous, and systematic contacts within Colorado, and has not purposely availed itself of the privilege of conducting business here.  Dennis Decl. ¶ 14. With respect to YTZ, no substantial part of the events giving rise to Belcaro's claims occurred in Colorado.  *Id.* ¶¶ 1-14.

## C.    Events Leading up to Litigation.

The impetus for Belcaro's Complaint was QuiBids' accusation that Belcaro's products and services are fraudulent and amounted to Belcaro unlawfully accessing computers in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").  Compl. ¶¶ 1 & 19.  Rather than wait for QuiBids to initiate legal action, Belcaro made the tactical decision to take the offensive.  Compl. ¶¶ 1 & 19.  Belcaro beat QuiBids to the courtroom filing this action on June 3, 2013.

Belcaro named YTZ as a defendant claiming YTZ breached its alleged duty to indemnify Belcaro by not funding Belcaro's affirmative prosecution of claims against QuiBids.  Compl. ¶¶ 40-43.  This allegation is based on the Master Agreement's provision that PPX would indemnify Belcaro for "claims, losses, liabilities, damages, costs and expense of any nature (including reasonable attorneys [sic] fees) relating to or arising out of (a) the promotion and distribution of the Offers. . . ."  Compl. ¶ 31.  Belcaro also asserts YTZ is bound by PPX's agreement and

obligated to indemnify Belcaro for QuiBids' claims that Belcaro committed intentional and unlawful acts, *i.e.*, fraud and violations of the CFAA.

## II. ANALYSIS AND ARGUMENT

### A.   This Court Lacks Personal Jurisdiction Over YTZ

#### 1.   Belcaro's Burden to Allege *Prima Facie* Case of Jurisdiction

In the face of a challenge to personal jurisdiction, "the plaintiff has the burden of proving jurisdiction exists." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Personal jurisdiction comes in two forms – "general or all-purpose jurisdiction, and specific or case-linked jurisdiction."  *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 131 S.Ct. 2846, 2851 (2011).  Although Personal jurisdiction can be waived through forum selection clauses,  Plaintiff cannot meet its burden because YTZ has not agreed to any forum selection clause.  Moreover, YTZ is not otherwise subject to personal jurisdiction in Colorado.

#### 2.   YTZ Did Not Consent to Jurisdiction in Colorado

Plaintiff contends the forum selection clauses in the Master Agreements bind YTZ to litigate this suit in Colorado.  Compl. ¶ 8.  Plaintiff alleges jurisdiction is proper based on the incorrect assertion that YTZ agreed "on behalf of itself and as an agent for QuiBids" to the Governance provision of the Master Agreement.  Compl. ¶ 8.  Plaintiff's Complaint is fundamentally flawed, however, because YTZ is not a party to the Master Agreements and did not agree to jurisdiction in Colorado.  Compl. ¶ 8; Dennis Decl. ¶ 4.  The Master Agreements are between Plaintiff and PPX, and Plaintiff and RRM, and Plaintiff and Turn Two Media.  Compl. ¶¶ 15-17.  YTZ is not a signatory to any of these Master Agreements.  Consequently, YTZ made no transaction with a Colorado citizen upon which jurisdiction in this state could be based. Dennis Decl. ¶ 3.  Further, YTZ has never done business as PPX or WSF Monetization, as

alleged "on information and belief" in the Complaint.  Compl. ¶ 5; Dennis Decl. ¶¶ 7-8.  As

explained above, YTZ was not organized as YTZ until more than twenty months after PPX

executed the Master Agreement.  Dennis Decl. ¶ 5.

### 3. The Two-Step Jurisdictional Analysis

Absent YTZ's consent to jurisdiction, Belcaro must establish either specific or general

jurisdiction, which it cannot do.  To obtain personal jurisdiction over a nonresident defendant in

a diversity action, plaintiff must prove that "jurisdiction is legitimate under the laws of the forum

state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth

Amendment." *Benton*, 375 F.3d at 1075.  Colorado's long arm statute, C.R.S. § 13-1-124 *et seq.*,

"is coextensive with constitutional limitations imposed by the due process clause." *Id.* The two

analyses are therefore collapsed into one—constitutional due process.

Constitutional due process requires a defendant to have "certain minimum contacts with

the forum state such that maintenance of the suit does not offend traditional notions of fair play

and substantial justice." *Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC*,

234 P.3d 673, 678 (Colo. 2010).  This minimum contacts standard can be met in the following

two ways:

> First, a court may, consistent with due process, assert *specific* jurisdiction over a
> nonresident defendant if the defendant has 'purposefully directed' his activities at
> residents of the forum, and the litigation results from alleged injuries that 'arise
> out of or relate to' those activities. Where a court's exercise of jurisdiction does
> not directly arise from a defendant's forum-related activities, the court may
> nonetheless maintain *general* personal jurisdiction over the defendant based on
> the defendant's general business contacts with the forum state.

*Benton*, 375 F.3d at 1075 *quoting OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir.1998) (internal citations omitted).  Belcaro cannot satisfy either standard.

### 4.        This Court Lacks Specific Jurisdiction Over YTZ

YTZ is not subject to specific jurisdiction in Colorado.  A court may exercise specific jurisdiction over a defendant if the defendant's minimum contacts in or directed at the forum give rise to the claims which are the subject of the litigation. *See Pro Axess, Inc. v. Orlux Distribution, Inc*., 428 F.3d 1270, 1276 (10th Cir. 2005); *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1049 (D. Colo. 2012).  If a defendant's contacts do give rise to such a claim, the Court must then consider whether its assertion of jurisdiction would comport with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Belcaro's Complaint does not allege any meaningful action by YTZ in Colorado upon which specific jurisdiction can be based.  Although the Master Agreement identifies PPX, and not YTZ as the signatory, Belcaro seeks to include YTZ by alleging "on information and belief" that YTZ is "f/k/a PPX and a/k/a WSF Monetization."  Plaintiff alleges nothing further in support of this claim.  Plaintiff's assertion is unsupported by any facts which would establish the minimum contacts necessary for personal jurisdiction in Colorado.  Regardless of any other parties' purported contractual obligations, YTZ has never agreed to indemnify Belcaro in any context.  YTZ has not "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Because YTZ has few, if any, contacts with Colorado, YTZ need not make a particularly

strong showing to defeat jurisdiction under this reasonableness inquiry. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998). "[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *Id.* at 1096 (internal citations omitted). The burden on YTZ of litigating in Colorado is significant. YTZ is a Canadian company with no physical presence in Colorado. Dennis Decl. ¶¶ 10-12. YTZ never entered into an indemnity agreement with Plaintiff so there cannot be any contractual indemnification obligation for YTZ to honor. *Id.* ¶¶ 3-4. The burden on YTZ would be significant and undue should YTZ be forced to defend itself in Colorado, where no form of personal jurisdiction exists. Consequently, YTZ should be dismissed from this action.

### 5.    This Court Lacks General Jurisdiction Over YTZ

The Court also lacks general jurisdiction over YTZ as YTZ does not have the "continuous and systematic" contacts necessary to hail it into Colorado courts. To demonstrate general jurisdiction, Plaintiff must establish that YTZ's general business contacts with Colorado are so "continuous and systematic" that jurisdiction is appropriate under the Due Process Clause even though Plaintiff's causes of action have no relation to those contacts. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, which is a "high burden" for Belcaro to meet. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. Appx. 86, 94 (10th Cir. 2012) (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one

in which the corporation is fairly regarded as at home." *See Goodyear Dunlop Tires*, 131 S.Ct.

at 2853-54.  YTZ cannot be fairly regarded as "home" in Colorado, nor has Plaintiff alleged

"continuous and systematic" contacts sufficient to subject the matter to dispute.  Dennis Decl. ¶¶

10-14.

      YTZ is not based in Colorado, does not have an office in Colorado, does not own any real

property in Colorado, does not have a telephone number or address in Colorado, and is not

registered with the Colorado Secretary of State.  Dennis Decl. ¶ 12.  No YTZ employee has ever

been permanently stationed in Colorado, no company meetings have ever occurred in Colorado,

and no business records or bank accounts are maintained in Colorado.  *Id.* ¶ 11.  Consequently,

general jurisdiction over YTZ is absent.

      The Tenth Circuit has acknowledged that "[a] web site will subject a defendant to general

personal jurisdiction only when the defendant has actually and deliberately used its website to

conduct commercial transactions on *a sustained basis with a substantial number of residents* of

the forum" and with commercial contacts "that approximate physical presence in the state."  *See*

*Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) (internal citations omitted).  Simply

"engaging in commerce with residents of the forum state is not in and of itself the kind of

activity that approximates physical presence within the state's borders."  *Id.*  Acknowledging that

the omnipresence of the internet presents problems related to a general personal jurisdiction

inquiry, the *Shrader* Court determined that "it is necessary to adapt the analysis of personal

jurisdiction to this unique circumstance by placing emphasis on the internet user or site

*intentionally directing* his/her/its activity or operation at the forum state rather than just having

the activity or operation accessible there."  *Id.* at 1240-41 (internal citations and emphasis

omitted).

YTZ maintains a nationally-available website, yet does not intentionally direct its internet activities at Colorado or otherwise seek to cultivate unique business activity in Colorado.  Dennis Decl. ¶ 13.  The YTZ website is merely accessible in Colorado, the same as every other state.  *Id*.  Certainly, YTZ never contracted with Belcaro, and YTZ has never conducted business as PPX or WSF Monetization.  *Id*. ¶¶ 3-5, 7-8.

If YTZ could be unsuspectingly hailed into Colorado to answer for claims unrelated to any relatively nominal presence, this would "render[] the territorial limits of personal jurisdiction meaningless"—the exact result courts try to avoid.  *Shrader*, 633 F.3d at 1240.  Seeking to avoid the destruction of the general personal jurisdiction doctrine, courts around the country have ruled, similarly to the Tenth Circuit, that the ability to access an interactive website facilitating commercial transactions does not establish general jurisdiction in an otherwise lacking forum. *See, e.g., Estate of Bank v. Swiss Valley Farms, Co*., 286 F. Supp. 2d 514, 517 (D. Md. 2003) (noting that broad general jurisdiction in the context of websites risks "the evisceration of constitutional limits" and collecting cases where even the presence of employees and millions of dollars in revenue did not establish general personal jurisdiction); *Euromarket Designs, Inc. v. Crate & Barrel Ltd*., 96 F. Supp. 2d 824, 829 (N.D. Ill. 2000) (finding no general jurisdiction where a website allowed worldwide visitors to both view and purchase the same household goods and furniture sold in the retail store); *Arlington Indus., Inc. v. Elec. Custom Distributors, Inc*., 817 F. Supp. 2d 473, 479-80 (M.D. Pa. 2011) (citing to Eighth and Federal Circuit precedent supporting the idea that while a relatively small volume of business does not preclude a finding of general jurisdiction, it is generally not enough to independently satisfy general

-11-

personal jurisdiction requirements).

If YTZ is subject to general jurisdiction in Colorado, it logically follows that YTZ and every other internet company are subject to general jurisdiction in every state, subjecting all (including Belcaro) to suit for any claim, in any jurisdiction, at any time.  YTZ lacks the magnitude of continuous and systemic contacts sufficient to make Colorado its "home."  Consequently, Plaintiff is unable to meet its "high burden" and YTZ should be dismissed.

### B.   Belcaro's Purported Service of Process on YTZ Was Insufficient.

#### 1.   Belcaro's Burden to Prove Service of Process

It is Belcaro's burden to establish the validity of service of process.  *Fed. Dep. Ins. Co. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).  Belcaro's Proof of Service on YTZ indicates it was delivered to YTZ at its corporate office in Toronto, Ontario, Canada via "registered mail using the United States Postal Service."  Doc. 21 Proof of Service.  Service by registered mail would only suffice under the Master Agreement had YTZ been a party thereto and thereby consented to the jurisdiction/service-of-process-by-mail provision.  *See* Compl. Ex. 1 ¶ 12.  Because YTZ did not consent, Belcaro's service on YTZ would only be sufficient if it had complied with the rules for obtaining service of process on a Canadian corporation.  Belcaro did not comply with those rules.

#### 2.   Belcaro's Failure to Comply with Applicable Service of Process Rules

Fed. R. Civ. P. 4(h)(2) and 4(f) permit service on a foreign corporation as follows:  a foreign party may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents…."  The United States and Canada are both

{JK00500939.4 }

signatories of the Hague Convention.  Belcaro has failed to demonstrate proper service pursuant to the Convention.

Service of process is governed by Article 19 of the Hague Convention, whereby service must be effected pursuant to "the internal law of the contracting State," in this case Canada.  The Revised Statutes of Ontario ("R.S.O.") state that "[a]n originating process *shall be served personally* as provided in rule 16.02 or by an alternative to personal service as provided in rule 16.03."  R.S.O. 16.01(1) (emphasis added).  The only possibly applicable alternative applies to service on a corporation <u>after</u> the person effectuating service explores the possibility of personal service:

> Where the head office, registered office or principal place of business of a corporation…<u>cannot be found</u> at the last address recorded with the Ministry of Consumer and Commercial Relations [now known as the Ministry of Government Services], service may be made on the corporation by mailing a copy of the document to the corporation or to the attorney for service in Ontario, as the case may be, at that address.

R.S.O. 16.03(6) (emphasis added).

Belcaro mailed the summons to YTZ at 530 Richmond Street W, REAR, Toronto, Ontario 1Y4, Canada.  Doc. 21.  That address is registered as YTZ's address with the Ontario Ministry of Government Services (see Attachment B, Ontario Ministry of Government Services' Business Names Report[1]) and is YTZ's current operating place of business.  Belcaro has not

---

[1] Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6)motion.  *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this general rule include situations where a document is incorporated by reference in the complaint, is referred to in and is central to the complaint, or matters of which a court may take judicial notice.  *Id.* (citations omitted).  The Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  As the Business Names Report for YTZ is a fact of which the Court can take judicial notice, the Court should consider Attachment B in deciding this

-13-

shown it attempted personal service or was otherwise permitted to effectuate service by mail. Accordingly, Belcaro did not properly serve YTZ under Article 19 of the Hague Convention and Belcaro's claims against YTZ should be dismissed.

### C. Plaintiff's Complaint Fails to State a Claim for Relief Against YTZ.

#### 1. Plaintiff Cannot Seek Indemnification From YTZ Because YTZ Did Not Agree To Indemnify Plaintiff

Notwithstanding the apparent defects in personal jurisdiction, YTZ additionally moves to dismiss Plaintiff's specific counts for failure to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff must allege facts which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff must "nudge [its] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Id.* Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Rather, Plaintiff must offer sufficient factual allegations to "raise a right to relief above the speculative level." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Thus, the Court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest" YTZ is liable to indemnify Belcaro under a contract to which YTZ is not a party. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012).

Here, Plaintiff alleges "on information and belief" that YTZ is "f/k/a PPX and a/k/a WSF

---

motion, the authenticity of which the Court can confirm at
https://www.services.gov.on.ca/locations/serviceDetails.do?id=11582&locale=EN

{JK00500939.4 }

Monetization."  Compl. ¶ 5.  Belcaro's attempt to attribute PPX's agreement to YTZ is baseless – the proper defendant in this regard is PPX, not YTZ.  YTZ was not a party to any Master Agreement so could not have agreed to any "Governance" provisions as alleged in paragraph 8 of the Complaint.  Furthermore, YTZ entered into no written contract to do business with Plaintiff in Colorado.  Dennis Decl. ¶ 4.  Plaintiff improperly attributes all allegations against PPX to YTZ.  Yet, because no such relationship exists, YTZ must be dismissed from this action.

> **2. Even if YTZ may be Subject to Personal Jurisdiction or Bound by the Master Agreement, the Indemnification Provision Does Not Pertain to this Case**

Where a party seeks to enforce an indemnification provision, the provision must state with specificity the intentional or wrongful conduct which warrants indemnification.  Assuming, *arguendo*, that YTZ may be subject to the Master Agreement, the indemnification provision does not warrant indemnification for the tortious conduct of which QuiBids accused Belcaro.

> **a. *The Indemnity Clause does not address the complained of conduct***

The indemnity provision Plaintiff seeks to enforce does not reach the conduct for which Plaintiff seeks indemnification.  "[T]he duty to indemnify is only triggered where the [provision] actually covers the alleged harm."  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 300 (Colo. 2003); *see also Constitution Assocs. v. New Hampshire Ins. Co.,* 930 P.2d 556, 563 (Colo. 1996) (same).  The provision by its own terms does not apply to the harm occasioned by Plaintiff's fraudulent billing rather than its advertisement of the Offers.  The indemnity clause provides the following:

> **Indemnification.**  Advertiser agrees to defend, indemnify and hold harmless [Belcaro] and its officers, directors, employees and agents from any and all claims, losses, liabilities, damages, costs and expenses of any nature (including reasonable attorneys [sic] fees)

> relating to or arising out of (a) the promotion and distribution of the
> Offers; (b) any and all copy and images supplied by Advertiser and
> [Belcaro]'s user thereof; and (c) Advertiser's breach of this
> Agreement.

Compl. Exh. 1 ¶ 8.  The term "Offers" is defined in the Master Agreement as follows:

> [Belcaro] shall promote Advertiser's offers ("Offers"), including
> both Advertiser's direct offers as well as offers for which
> Advertiser is acting on behalf of third party advertising agencies....

Complaint, Exh. 1, ¶ 1.

Plaintiff's indemnification claim is predicated on sub-section (a) of the indemnification clause.  Neither sub-section (b) (the unauthorized use of images) nor sub-section (c) (breach of other portions of the Agreement) are applicable here.  However, even sub-section (a) does not give rise to an indemnification claim given QuiBids' allegations.  QuiBids asserts that Plaintiff acted <u>fraudulently</u>.  Compl. ¶ 19.  QuiBids' allegations constitute the basis for Plaintiff's claim for indemnification against YTZ.  Compl. ¶¶ 31-32.

QuiBids' demand letters do not trigger the indemnification obligation in the Master Agreement.  QuiBids' allegations of Belcaro's intentional torts are not claims which arise out of the promotion and distribution of the Offers.  Sub-section (a) of the indemnification provision concerns instances where the Offers are unauthorized or where a promotional offer is not honored by the issuer and Plaintiff is named in a false advertising claim.  In fact, this dispute has <u>nothing</u> to do with the Offers and, rather, is predicated upon Plaintiff's fraudulent charges and its hijacking and redirecting of traffic.  The Offers are not at issue.  Therefore, this claim should be dismissed as to YTZ.

{JK00500939.4 }

### b.  *The Indemnification Provision Does Not Create an Indemnification Obligation for Belcaro's Own Wrongful Conduct*

"'[I]ndemnity contracts holding indemnitees harmless for their own negligent acts must contain clear and unequivocal language to that effect.'"  *Public Serv. Co. of Colorado v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1283 (Colo.1992) (quoting *Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 426 (Colo.1988)). "'[A] contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties.'"  *Id*. (*quoting United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)). "Ambiguities will be resolved against the party seeking indemnity." *Williams*, 749 P.2d at 426.

A contract for indemnification must be sufficiently clear as to the specific acts entitling indemnification to the contracting parties:

> [T]he broad, all-inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit.

*Williams*, 749 P.2d at 426–47 (citation omitted).  *Williams* found that "[t]his reasoning applies with greater force when the statement is not only broad but ambiguous."  *Id*.  In holding that the district court correctly found no contract of indemnity, *Williams* concluded that "the burden of indemnity is so onerous that we hesitate to impose it unless the language used clearly requires such a result." *Id*.  *Williams* and the other cases construing indemnity agreements look to the contractual language itself to see if the language clearly and unequivocally indicates an intent to indemnify, under a strict construction standard.  While the parties' intent is relevant to this

-17-

determination, it is relevant only insofar as the intent is expressed in the contract itself. *U.S. Brass Corp. v. Dormont Manufacturing Co*., 242 Fed. Appx. 575, 577 (10th Cir. 2007).

The circumstances here do not specifically and unambiguously require indemnity as Belcaro would allege. This dispute centers not on the promotion of the Offers, but rather on Belcaro's fraudulent billing. Therefore, sub-section (a) does not apply. Belcaro, as putative indemnitee, is alleged to have submitted fraudulent billing and hijacked web traffic. The indemnity provision does not address allegations of Belcaro's negligence or Belcaro's intentional misconduct, so the indemnification provision cannot be enforced against YTZ. *United Cable Television of Jeffco, Inc*., 829 P.2d at 1283 (quoting *Williams*, 749 P.2d at 426). Thus, even if sub-section (a) applied to the fraudulent charges for the Offers—which it does not—it does not apply to YTZ because it does not reach the issue of indemnity for Belcaro's own wrongful acts, be they negligent or intentional.

### c.  *The Indemnification Provision Does Not Apply to Plaintiff's Own Intentional Misconduct and Fraud*

Belcaro's demand for indemnification stems from accusations of intentional wrongful conduct consisting of fraud and tortious interference. Specifically, Plaintiff's claim for indemnification is based on the accusations of fraud. Compl. ¶¶ 19, 32. Thus, Belcaro is, by its own admission, attempting to obtain indemnity in connection with claims that it has engaged in fraudulent conduct. No indemnity for intentional wrongful conduct may be provided under Colorado law.

Under Colorado law, public policy warrants no indemnification for intentional torts:

> Assuming *arguendo* that a party could contractually insulate itself from liability for fraud and other intentional torts without running afoul of the public policy of the state of Colorado, the language of

-18-

> the contract would have to be much more specific than that on which defendants rely here.  *See* [*Keller v. A.O. Smith Harvestore Products, Inc.,* 819 P.2d 69, 73 (Colo. 1991)] ("A contract provision purporting to prohibit a party to the contract from asserting a claim of negligent misrepresentation must be couched in clear and specific language.").

*Bridgwater Apartments, LLC v. 6401 South Boston Street, Inc.* 2006 WL 295385, *3 (D. Colo. 2006); *see also Sundance Servs., Inc. v. Roach*, 2011 WL 3608014,*4 (D.N.M. July 7, 2011) (stating that "[o]ther state courts have held that indemnity, in general, does not apply to intentional torts[,]" *citing First American Corp. v. Al-Nahyan,* 948 F.Supp. 1107, 1119 (D.D.C.1996) (intentional activities, as opposed to negligent acts, deprive party of right to indemnification); *Piscitelli v. Metro North Commuter RR,* 1995 WL 541806 *4 (Conn.Super.) (unpublished decision) ("[I]ndemnity requires a finding of negligence...."); *Canavin v. Naik,* 648 F.Supp. 268, 269 (E.D.Pa.1986) (under Pennsylvania law, indemnity is not available to intentional tortfeasors "because it would permit him to escape liability for his own deliberate acts.")).

The limited indemnity provision here is entirely silent on the issue of indemnity for intentional acts.  Consequently, under Colorado law, Belcaro has no right to indemnity given QuiBids' allegations.

Dismissal of Belcaro's claims against YTZ is appropriate as (1) YTZ is not a party to the agreement serving as the basis for the indemnity claim; (2) the indemnity provision in the subject agreement does not address the complained of conduct consisting of Plaintiff's sending of fraudulent billing and fraudulent traffic; (3) the indemnification provision does not address negligent acts by the party seeking indemnity; and (4) no indemnification is available for intentional wrongful acts such as conversion and fraud.  These defects cannot be cured by

-19-

amendment as the indemnity provision appearing in the proffered agreement will not change. Consequently, YTZ should be dismissed from this action.

### III.   CONCLUSION

Plaintiff's Complaint fails to demonstrate that this Court has personal jurisdiction as to YTZ.  Furthermore, Plaintiff fails to allege facts that state a claim amount to any indemnity obligation on the part of YTZ, wherein YTZ was not a party to any of the subject agreements, and furthermore, is not even the proper defendant in this action. Thus, YTZ requests dismissal for lack of personal jurisdiction and failure to state a claim upon which relief may be granted.

DATED:  August 9, 2013

Respectfully submitted,

_s/ Eugene Rome_
Eugene Rome,
Elizabeth Wang,
ROME & ASSOCIATES, A.P.C.
2029 Century Park East, Suite 1040
Los Angeles, CA 90067
Telephone: (310) 282-0690
Email:  erome@romeandassociates.com
          isaura@romeandassociates.com

and

_s/ Aaron D. Goldhamer_
Lucas T. Ritchie
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: (303) 573-1600
Email: lritchie@joneskeller.com
          agoldhamer@joneskeller.com

*Attorneys for Defendant YTZ International Inc.*

-20-

**CERTIFICATE OF SERVICE**

        I hereby certify that on August 9, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Jennifer A. Golinveaux, Esq.<br>jgolinveaux@winston.com | Steven C. Jniszewski, Esq.<br>sjaniszewski@riggsabney.com |
| Michael S. Elkin, Esq.<br>melkin@winston.com | Gregory Thomas Metcalfe, Esq.<br>gmetcalfe@gablelaw.com |
| Erin R. Ranahan, Esq.<br>eranahan@winston.com | John Michael Krattiger, Esq.<br>jkrattiger@gablelaw.com |
| John M. Tanner, Esq.<br>jtanner@fwlaw.com<br><br>*Attorneys for Plaintiff* | *Attorneys for Defendants QUIBIDS, LLC and QUIBIDS Holdings, LLC* |

*s/ Renae K. Mesch*
Renae K. Mesch

{JK00500939.4 }