# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-01424-MSK-BNB

BELCARO GROUP, INC. d/b/a SHOPATHOME.COM, a Colorado corporation,

        Plaintiff,

v.

QUIBIDS LLC, an Oklahoma limited liability company,
QUIBIDS HOLDINGS LLC, a Delaware limited liability company,
YTZ INTERNATIONAL INC. f/k/a PPX and a/k/a WSF MONETIZATION, a Canada corporation, and
RAPID RESPONSE MARKETING LLC f/k/a XY7.COM and a/k/a XY7ELITE.COM, a Nevada limited liability company.

        Defendants.

_____

## PLAINTIFF BELCARO GROUP, INC.'S MOTION WITH INCORPORATED LEGAL AUTHORITY FOR JURISDICTIONAL DISCOVERY FROM DEFENDANT YTZ INTERNATIONAL, INC.
_____

Belcaro Group, Inc. d/b/a ShopAtHome.com ("SAH"), by and through its attorneys, Fairfield and Woods, P.C. and Winston & Strawn LLP, hereby moves this Court to order Defendant YTZ International, Inc. ("YTZ") to submit to expedited, limited jurisdictional discovery to which YTZ is required to respond by October 10, 2013. The Court should allow SAH to conduct expedited jurisdictional discovery because SAH will be prejudiced if it is required to respond to YTZ's motion to dismiss for lack of personal jurisdiction without being allowed discovery on the factual issues raised by that motion.

-1-

**Certification Pursuant to the Colorado Local Rule 7.1**

Undersigned counsel has conferred with counsel for YTZ and this motion will be opposed.

## I.   INTRODUCTION

SAH seeks expedited, limited jurisdictional discovery for the purpose of testing YTZ's assertion in its motion to dismiss that this Court has no personal jurisdiction over YTZ. The Court should order limited jurisdictional discovery in cases like this, where jurisdictional facts are in dispute and prejudice will result to a litigant absent a fuller showing of the facts. Jurisdictional discovery is necessary here because the parties dispute whether Defendant YTZ assumed the contractual obligations of PPX. SAH and PPX executed a Master Agreement whereby PPX agreed to submit to the jurisdiction of the courts of Colorado and agreed to accept service of process via certified mail. PPX's representative Tobiah Adam, who executed the Master Agreement on behalf of PPX and was SAH's primary point of contact with PPX, suddenly and without notice began communicating with SAH using a YTZ email address (although for a time he continued to have a PPX signature block). Additionally, YTZ wired more than $100,000.00 to SAH in Colorado for outstanding payments owed that PPX owed to YTZ for invoices dating back to December 2011. Based on this course of conduct, SAH reasonably believed that PPX had changed its name to YTZ (and in fact identified PPX as YTZ's predecessor in its Complaint). If YTZ did indeed assume the contractual obligations of PPX, YTZ's jurisdictional arguments in its motion to dismiss will necessarily fail. Accordingly, SAH will be prejudiced unless the Court permits SAH to conduct limited discovery into the

-3-

relationship between YTZ and PPX, and to more fully explore YTZ's contacts with the State of Colorado.

## II.   FACTUAL BACKGROUND

SAH filed its Complaint against YTZ and other Defendants on June 3, 2013. (Dkt. No. 1 (Complaint).) SAH states claims against YTZ for (1) declaratory relief and (2) express/contractual indemnity. (*See id.*) The claims arise out of SAH's contracts with various networks that placed advertisements with SAH on behalf of QuiBids LLC.

SAH alleges on information and belief that YTZ is formerly known as PPX (and also known as WSF Monetization). (*See id.* ¶ 5.) SAH entered a Master Terms and Conditions Agreement (the "Master Agreement") with PPX/YTZ on November 16, 2010. (Dkt. No. 1-1 (Compl. Ex. 1) at 2; Compl. ¶ 17.) Under the terms of the Master Agreement, PPX/YTZ agreed to indemnify SAH if a dispute arose with regard to PPX/YTZ's placement of advertisements with SAH. (Compl. ¶ 31.) SAH alleges that it entered into the Master Agreement with YTZ, and it can thus be inferred from the facts alleged in the Complaint that YTZ assumed PPX's contractual obligations under the Master Agreement (*See id.* ¶¶ 5 (YTZ formerly known as PPX), 8 (alleging contract between SAH and YTZ), 17 (same).) YTZ made advertising offers available to SAH on behalf of QuiBids until in or around March 2013. (*Id.*¶ 18.)

When SAH contacted PPX in May 2012 regarding an outstanding payment, it received a return email from someone purporting to represent YTZ that stated, "A wire for $107,960.00 was requested and should be in your account tomorrow for Dec-Mar invoices." (*See* Affidavit of Cynthia W. Stickney ¶ 6, Ex. A.) YTZ claims that it did not become "operational" before July 19, 2012. (*See* Dennis Decl. (Dkt. No. 25-1) ¶ 5.) YTZ further states it "had not conducted any

-3-

business" before that time. (*See id.*) But SAH began receiving emails from YTZ starting in May 2012. (*See* Stickney Aff. ¶ 6, Ex. A.) And when SAH contacted PPX to request an outstanding payment, it received an email back from YTZ indicating that YTZ would wire money to SAH for PPX invoices dating back to December 2011. (*See id.*) Additionally, although YTZ claims to have conducted no business until after July 19, 2012, YTZ's own website states that it has "worked with redirect traffic for over 5 years, and in affiliate marketing since 2001." *See* http://ytz.com/faq (last visited September 3, 2013).

The Master Agreement between SAH and PPX is signed by Tobiah Adam on behalf of PPX. (*See id.*) Mr. Adam was SAH's primary point of contact with both PPX and YTZ. (Affidavit of Cynthia W. Stickney, ¶ 8.) Without any formal notification, Mr. Adam began corresponding with SAH from a YTZ email address as early as June 29, 2012. (*See id.* ¶¶ 7-8.) Indeed, for a certain period of time, Mr. Adam's emails came from a YTZ email address even though he continued to use a PPX signature block. (*See id.* ¶ 7, Ex. B.) The offers and advertisements that YTZ made available to SAH were the same offers and advertisements that PPX had made available to SAH. (*See id.* ¶ 8.) In other words, SAH and Mr. Adam continued doing business seamlessly as PPX transitioned to YTZ without any notification to SAH other than the change to Mr. Adam's email address and eventually the signature block on his emails. (*See id.* ¶¶ 7-8.)

QuiBids threatened to file suit against SAH, claiming that SAH's Toolbar routs user traffic through SAH's website without proper disclosures. (*See* Compl. ¶ 23.) But SAH fully disclosed the functionality of the Toolbar to YTZ and other networks that placed advertisements with SAH on behalf of QuiBids. (*See id.* ¶ 20.) First, SAH disclosed the Toolbar functionality

-4-

to YTZ in the Master Agreement.  (*See id.* ¶¶ 25-27.)   Second, an SAH Account Executive discussed the redirect functionality of its Toolbar with a YTZ representative.  (*See id.* ¶ 28.) Additionally, YTZ touts on its website that it has been "work[ing] with redirect traffic" for "over 5 years," suggesting that it is familiar with and understands the redirect features of the Toolbar. (*Id.*)  Accordingly, SAH seeks indemnification from YTZ for any liability to QuiBids resulting from QuiBids' claims arising out of the functionality of the Toolbar.  (*See id.* ¶¶ 40-49.)

YTZ moved to dismiss SAH's Complaint on August 9, 2013 asserting, among other things, that this Court lacks personal jurisdiction over YTZ and that YTZ had not been properly served under the Hague Convention.  (*See* Dkt. No. 25 (Motion).)

### III. LEGAL STANDARD GOVERNING JURISDICTIONAL DISCOVERY

In the Tenth Circuit, "'[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.'"  *Sizova v. Nat'l Institute of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (quoting *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)).  "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant."  *Id.*  "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'"  *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).  Accordingly, courts in this district routinely grant requests for jurisdictional discovery in appropriate circumstances.  *See, e.g.*, *Ensign U.S. Drilling, Inc. v. B & H Rig & Tong Sales*, No. 13-cv-00724-LTB, 2013 WL 3233614 (D. Colo. Jun. 26, 2013); *Procom Supply, LLC v. Langner*, No. 12-cv-00391-MSK-

KMT, 2013 WL 2351342 (D. Colo. May 17, 2013); *Infonow Corp. v. Zyme Solutions, Inc.*, No. 12-cv-03255-MSK-MEH, 2013 WL 173421 (D. Colo. Jan. 16, 2013).

## IV.   SAH WILL BE PREJUDICED UNLESS THE COURT GRANTS SAH LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

The jurisdictional discovery that SAH seeks in this motion is informed by the standards governing personal jurisdiction.  Colorado's long-arm statute "extend[s] the jurisdiction of Colorado courts to the fullest extent permitted by the due process clause of the United States Constitution."  *Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984).  "The Court may exercise personal jurisdiction over a nonresident defendant as long as "there exist 'minimum contacts' between the defendant and the forum state."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1979).  First, the Court may maintain *general* jurisdiction over a defendant based on the defendant's "continuous and systematic general business contacts" within the forum state.  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).  Second, a court may assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal quotations omitted).

Based on the facts alleged in the Complaint, this Court could determine that YTZ has sufficient minimum contacts with Colorado such that the Court has personal jurisdiction over YTZ.  Nonetheless, SAH seeks jurisdictional discovery to provide further factual support for the existence of personal jurisdiction over YTZ.  SAH would be prejudiced if the Court were to

grant YTZ's motion to dismiss without allowing SAH to conduct jurisdictional discovery to investigate these and other questions raised by the motion.

### A. The Court Should Grant Jurisdictional Discovery Into YTZ's Actions That Gave Rise to This Lawsuit.

#### 1. Prejudice Will Result Unless SAH Is Permitted Discovery Regarding the Relationship Between YTZ and PPX.

In contract cases, the Court has personal jurisdiction where the defendant "'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). "[P]arties who reach out beyond the state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quotations omitted); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005). In addition, where a contract with the defendant contains a forum selection clause acquiescing to jurisdiction in the courts of the forum state, the court need not inquire any further into the defendant's minimum contacts with the forum state. *Nuclear Cardiology Sys., Inc. v. Mangla*, No. 10-cv-00045-REB-CBS, 2010 WL 2135298, at *5 (D. Colo. May 25, 2010).

SAH will be prejudiced if the Complaint is dismissed before SAH has the opportunity to conduct discovery into YTZ's relationship with PPX. The nature and extent of YTZ's relationship with PPX is critical to the jurisdictional analysis because SAH's contract with PPX contains a forum selection clause designating Colorado as the forum for any disputes:

> **Governance.** The laws of Colorado and applicable federal U.S. laws shall govern this Agreement. The parties agree that any

> claims, legal proceedings or litigation arising in connection with the Agreement will be brought solely in the state and federal courts located in Denver, Colorado and the parties consent to the jurisdiction of such courts.

(*See* Compl. ¶ 8.)  If YTZ assumed the contractual obligations of PPX, YTZ is bound by this forum selection clause as well.

The evidence currently available to SAH suggests that YTZ has assumed PPX's contractual obligations.  Preliminarily, although YTZ asserts in its motion to dismiss that it did not become operational until after July 19, 2012, it claims on its own website to have "worked with redirect traffic for over 5 years, and in affiliate marketing since 2001."  *See* http://ytz.com/faq (last visited September 3, 2013).  SAH's main contact at PPX, Tobiah Adam, now works at YTZ.  Indeed, SAH began receiving emails from Mr. Adam at his YTZ email address as early as June 29, 2012.  (*See* Stickney Aff. ¶ 8, Ex. B.)  It was Mr. Adam who signed the Master Agreement on behalf of PPX.  Mr. Adam sent emails to SAH from a YTZ email address while still using his PPX signature block.  In other words, YTZ essentially stepped in, without any formal notice from Mr. Adam or anyone else at YTZ, and assumed the role of PPX in its dealings with SAH.

Moreover, when SAH contacted PPX in May 2012 regarding an outstanding payment, it received a return email from someone purporting to represent YTZ that stated, "A wire for $107,960.00 was requested and should be in your account tomorrow for Dec-Mar invoices." (*See* Stickney Aff. ¶ 6, Ex. A.)  YTZ claims that it did not become "operational" before July 19, 2012. (*See* Dennis Decl. (Dkt. No. 25-1) ¶ 5.)  YTZ further states it "had not conducted any business" before that time. (*See id.*)  But SAH began receiving emails from YTZ starting in May 2012.  (*See* Stickney Aff. ¶ 6, Ex. A.)  And when SAH contacted PPX to request an outstanding

-9-

payment, it received an email back from YTZ indicating that YTZ would wire money to SAH for PPX invoices dating back to December 2011. (*See id.*) Accordingly, during this time, YTZ received all of the benefits of SAH's Master Agreement with PPX. Given this conduct, YTZ should not now be permitted to avoid the burdens and obligations of that contract.

### 2. The Court Has Personal Jurisdiction Over YTZ Even if YTZ Is Not PPX's Successor.

Even if the Court were to find that YTZ did not assume the contractual obligations of PPX, the Court still has personal jurisdiction over YTZ as a result of YTZ's dealings with SAH. The Court may exercise jurisdiction over parties to interstate contracts who "reach out beyond one state and create continuing relationships and obligations with citizens of another state." *Burker King Corp.*, 471 U.S. at 473, 105 S. Ct. 2174, 85 L. Ed. 2d 528. Even if were true, as YTZ asserts, that there is no written contract between YTZ and SAH, YTZ does not dispute that the parties had an ongoing and continuing business relationship whereby YTZ benefitted financially from the offers and advertisements it made available to SAH. Indeed, YTZ wired more than $100,000.00 to SAH in exchange for SAH services on behalf of PPX. (*See* Stickney Aff. ¶ 7, Ex. A.) SAH now seeks indemnification from YTZ and declaratory relief after one of YTZ's advertisers threatened to bring claims against SAH. The claims at issue here thus arise directly out of the business relationship between YTZ and SAH. In seeking limited jurisdictional discovery, SAH does not waive the argument that the allegations of the Complaint are sufficient to establish that the Court has specific personal jurisdiction over YTZ.

### B.   SAH Will Be Prejudiced Unless the Court Allows Discovery Regarding YTZ's General Business Contacts With Colorado.

The Tenth Circuit has adopted a sliding scale in determining whether maintaining a website amounts to "continuous and systematic" contact with the forum state sufficient to subject a defendant to general personal jurisdiction. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999). On one end of the scale, "personal jurisdiction is established when 'a defendant clearly does business over the Internet, such as entering into contracts which require the knowing and repeated transmission of computer files over the internet.'" *Id.* (quoting *Patriot Sys., Inc. v. C-Cubed Corp.*, 21 F. Supp. 2d 1318, 1323-24 (D. Utah 1998)); *see also Miller v. Kelly*, No. 10-cv-02132-CMA-KLM, 2010 WL 4684029, at *3 (D. Colo. Nov. 12, 2010) ("It is well-settled that general personal jurisdiction may be exercised over the author of a business website."); *SCC Commcn's Corp. v. Anderson*, 190 F. Supp. 2d 1257, 1260-61 (D. Colo. 2002) (same); *1-800-Contacts, Inc. v. Memorial Eye, PA*, No. 2:08-CV-983 TS, 2009 WL 1586654, at *2-3 (D. Utah Jun. 4, 2009) (same); *Nutraceutical Corp. v. Vitacost.com, Inc.*, No. 2:05CV222DAK, 2006 WL 1493224, at *4 (D. Utah May 25, 2006) (same). On the other end of the scale, "exercising personal jurisdiction is not appropriate when the Internet use involves '[a] passive Web site that does little more than make information available to those who are interested in it.'" *Soma*, 196 F.3d at 1296 (quoting *Patriot Sys.*, 21 F. Supp. 2d at 1324).

Here, discovery regarding YTZ's website and any other general business contacts with Colorado is necessary to establish this Court's authority to exercise general personal jurisdiction over YTZ. YTZ maintains a website at http://ytz.com. That website allows publishers like SAH to "sign up" with YTZ by setting up a login and sending their contact information to YTZ. *See*

-10-

http://ytz.com/signup (last visited September 2, 2013). Once a publisher signs up, it "will be contacted by one of [YTZ's] account representatives within 48 hours." *See* http://ytz.com/faq (last visited September 2, 2013). "Once you sign up you will be given a unique redirect link, and access to real time reporting." *See id.* This is not a "passive" website that does little more than make information available. Rather, this is a highly interactive website that allows companies to initiate an ongoing business relationship with YTZ.

SAH should be given the opportunity to further explore the extent of YTZ's online business because it is directly relevant to whether YTZ's business activities in Colorado rise to the level of "continuous and systematic." Prejudice to SAH will thus result if the Court were to grant YTZ's motion to dismiss without first allowing discovery into YTZ's general business contacts with Colorado.

### C. Jurisdictional Discovery Is Also Relevant to YTZ's Motion to Quash Service of Process.

In addition to ordering discovery in connection with the Court's personal jurisdiction over YTZ, the Court can also order discovery if necessary to determine whether SAH properly effected service of process. *See Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008). In *Blair*, the district court had dismissed the plaintiffs' original action for insufficient service of process. *Id.* at 110. The First Circuit reversed, finding that the district court abused its discretion in denying limited jurisdictional discovery for the purpose of determining whether the individual who plaintiffs had served was an agent authorized to accept service on behalf of the defendant. *See id.* at 110-11.

Here, as in *Blair*, limited jurisdictional discovery is necessary to determine whether YTZ assumed the contractual obligations of PPX, and thus whether YTZ agreed to accept service via

-11-

-12-

mail. Under the Master Agreement, the parties "agree that service of process may be made by certified mail." (*See* Compl. Ex. 1 ¶ 12.) Therefore, a finding that YTZ assumed the contractual obligations of PPX would be dispositive of YTZ's jurisdictional arguments, both with respect to service of process and with respect to the Court's exercise of personal jurisdiction over YTZ under the Constitution. Therefore, the Court should permit limited jurisdictional discovery to determine wither YTZ assumed the contractual obligations of PPX.

### D. SAH Requests That the Court Permit SAH to Take Depositions and Propound Written Discovery.

In order to fully explore the jurisdictional issues raised in the Complaint and in YTZ's motion to dismiss, SAH respectfully requests that the Court permit SAH to take the depositions of YTZ, Tobiah Adam, and Sam Dennis and to propound interrogatories and requests for production of documents on YTZ substantially in the form attached hereto as Exhibit 1, to which YTZ is required to respond no later than October 10, 2013. This discovery is necessary to test the assertions in YTZ's motion to dismiss regarding YTZ's relationship with PPX, and will assist the Court in analyzing whether it has personal jurisdiction over YTZ. Because this discovery is limited to the issue of personal jurisdiction, SAH requests that any interrogatories and document requests that SAH propounds not be counted against the number permitted under Federal Rule of Civil Procedure 33(a)(1) and the Court's Scheduling Order and local practice.

### V. CONCLUSION

For the foregoing reasons, SAH respectfully requests that the Court grant its motion for limited jurisdictional discovery substantially in the form attached as Exhibit 1, to which YTZ is required to respond no later than October 10, 2013.

Respectfully submitted this 3rd day of September, 2013.

        Jennifer A. Golinveaux
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111
jgolinveaux@winston.com
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY  10166-4193
melkin@winston.com
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Erin R. Ranahan
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA  90071-1543
eranahan@winston.com
(213) 615-1700 (Telephone)
(213) 615-1750 (Facsimile)

**FAIRFIELD AND WOODS, P.C.**

By: *s/ John M. Tanner*
     John M. Tanner
John M. Tanner
1700 Lincoln Street, Suite 2400
Denver, CO  80203-4524
Telephone:  (303) 830-2400
Facsimile:  (303) 830-1033
Email:  jtanner@fwlaw.com

Attorneys for Plaintiff
BELCARO GROUP, INC., d/b/a
SHOPATHOME.COM

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2013, I electronically filed the foregoing PLAINTIFF BELCARO GROUP, INC.'S MOTION WITH INCORPORATED LEGAL AUTHORITY FOR JURISDICTIONAL DISCOVERY FROM DEFENDANT YTZ INTERNATIONAL, INC. with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| Counsel | Party |
| --- | --- |
| Gregory Thomas Metcalfe<br>gmetcalfe@gablelaw.com<br><br>John Michael Krattiger<br>jkrattiger@gablelaw.com<br><br>Steven C. Janiszewski<br>sjaniszewski@riggsabney.com | *Counsel for Defendants Quibids LLC and Quibids Holdings LLC* |
| Richard Newman<br>rnewman@hinchnewman.com<br><br>Charles Mitchell<br>cmitchell@jinslaw.com | *Counsel for Defendant Rapid Response Marketing LLC* |
| Eugene Rome<br>erome@romeandassociates.com<br><br>Lucas T. Ritchie<br>lritchie@joneskeller.com<br><br>Aaron D. Goldhamer<br>agoldhamer@joneskeller.com | *Counsel for Specially Appearing Defendant YTZ International Inc.* |

s/ Erin R. Ranahan
Erin R. Ranahan

-14-