IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-1424-MSK-BNB

BELCARO GROUP, INC., a Colorado corporation doing business as SHOPATHOME.COM,

     Plaintiff,

v.

YTZ INTERNATIONAL INC., a Canada corporation formerly known as PPX, also known as
WSF Monetization.

     Defendant.

---

### DEFENDANT YTZ INTERNATIONAL INC.'S (1) RESPONSE TO PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY; AND (2) RESPONSE TO PLAINTIFF'S REQUEST FOR AN EXTENSION OF TIME TO RESPOND TO MOTION TO DISMISS

---

Defendant YTZ International Inc. ("YTZ"), through counsel, hereby responds to Plaintiff Belcaro Group, Inc. d/b/a SHOPATHOME.COM's ("Belcaro") Motion With Incorporated Legal Authority for Jurisdictional Discovery From Defendant YTZ International, Inc. and to Belcaro's Request for Extension to File an Opposition to Motion to Dismiss.

As demonstrated below, the recent settlement of the dispute by and between Belcaro on the one hand and Defendant QuiBids, LLC and QuiBids Holdings, LLC (collectively, "QuiBids"), effectively moots any claims as to YTZ as no "claim" for purposes of indemnity is pending as to Belcaro.  Because no claim by QuiBids was asserted and, now, cannot be asserted, there is no basis for Belcaro's efforts to obtain indemnity or a declaration as to indemnity from YTZ.  Since no viable claims exist, any jurisdictional discovery sought by Belcaro is needless as

its claims for relief cannot survive, irrespective of the existence or absence of personal jurisdiction.

## I. RELEVANT BACKGROUND FACTS AND PROCEDURAL HISTORY

### A.    Events Leading Up to Litigation.

The impetus for Belcaro's Complaint was QuiBids' accusation that Belcaro's products and services are fraudulent and amounted to Belcaro unlawfully accessing computers in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Compl. ¶¶ 1 & 19.  Rather than wait for QuiBids to initiate legal action, Belcaro made the tactical decision to take the offensive. Compl. ¶¶ 1 & 19.  Belcaro beat QuiBids to the courtroom by filing this action on June 3, 2013.

Apparently hoping to avoid the expense of its tactical decision to offensively pursue QuiBids, Belcaro named YTZ as a defendant.  Belcaro claims YTZ breached its alleged duty to indemnify Belcaro by not funding Belcaro's affirmative prosecution of claims against QuiBids. Compl. ¶¶ 40-43.  This allegation is based on the Master Agreement's provision that PPX—not YTZ—would indemnify SAH for "claims, losses, liabilities, damages, costs and expense of any nature (including reasonable attorneys [sic] fees) relating to or arising out of (a) the promotion and distribution of the Offers. . . ."  Compl. ¶ 31.  Belcaro now asserts YTZ is bound by PPX's agreement and obligated to indemnify Belcaro for QuiBids' claims that Belcaro committed intentional and unlawful acts, *i.e.*, fraud and violations of the CFAA.  SAH also seeks a declaration that YTZ must fund Belcaro's offensive prosecution of claims against QuiBids.

### B.    Belcaro's Settlement of the Suit with QuiBids and Dismissal of QuiBids.

Sometime in early September of 2013, Belcaro and QuiBids settled their dispute.  On September 4, 2013, Belcaro filed a stipulated motion to dismiss QuiBids.  (Doc. 34).  Thereafter,

on September 9, 2013, Judge Krieger granted Belcaro's stipulated motion and dismissed its claim against QuiBids with prejudice. (Doc. 41). No dispute remains between Belcaro and QuiBids.

## II. ANALYSIS AND ARGUMENT

### A. Legal Standard Governing Jurisdictional Discovery where a 12(b)(6) Motion is Also Pending

Colorado courts recognize a defendant's right to avoid the burden and expense of discovery where a dispositive motion may fully resolve a case. For instance in *McCarter v. Potter*, 2010 WL 148258, 2 (D. Colo. 2010), the Court stayed discovery where a pending motion to dismiss presented a threshold challenge to the case proceeding. *Id.* (citing *Frontier Steel Bldgs. Corp. v. S.J. Amoroso Const. Co., Inc.*, 08–cv–00408–MSK_KLM, 2008 WL 1925100, *2 (D. Colo. 2008)(unpublished); *Democratic Rep. of Congo v. FG Hemisphere Assocs., LLC*, 07–7045, 2007 WL 4165397, *2 (D.C.Cir.2007) (unpublished) (noting that the reason jurisdictional defenses should be raised at the outset is to avoid unnecessary litigation); *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001).

Colorado District Courts have routinely found that forcing a party to engage in discovery when a motion to dismiss based on a jurisdictional defense is pending would subject it to undue burden or expense if the motion to dismiss is later granted. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, *2 (D. Colo., March 30, 2006). Indeed, "a court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved." 8 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 2040, at 521–22 (2d ed. 1994) ("[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided."); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 804

(Fed.Cir.1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").

The wisdom of evaluating the viability of a claim before subjecting a party to discovery, whether jurisdictional or otherwise, has been addressed by a multitude of district courts in various districts.  Throughout the country, courts have denied discovery requests where the underlying complaint failed to raise factual questions requiring discovery to resolve.  For instance in a Ninth Circuit case, *Jarvis v. Regan,* 833 F.2d 149, 155 (9th Cir.1987), the appellate court found no error in its review of the district court's order dismissing the complaint where the record indicated that the district court accepted the facts alleged by the appellants as true, but found them deficient as a matter of law. Therefore, since the appellants' complaint did not raise factual issues that required discovery for their resolution, the district court did not abuse its discretion in staying discovery pending a hearing on the motion to dismiss.

Similarly, in a Nevada case, *Tradebay, LLC v. eBay, Inc.,* 278 F.R.D. 597 (D. Nev. 2011), the district court noted that "[t]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery" and granted a motion to stay discovery pending adjudication of a motion to dismiss. *Id.* at 601 (*citing Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir.1987) (emph. added)). *See also GTE Wireless, Inc. v. Qualcomm, Inc.,* 192 F.R.D. 284, 286 (S.D. Cal. 2000) (stating the court should "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an *immediate and clear possibility* that it will be granted.")

The "preliminary peek" approach adopted by the Ninth Circuit is particularly appropriate to the consideration of the instant motion as Belcaro has failed to state claims upon which relief can be granted, irrespective of the question whether YTZ is or is not subject to personal jurisdiction before Colorado courts.  For reasons discussed more fully below, the Ninth Circuit

approach is consistent with the policy considerations underlying the Tenth Circuit's five-pronged test set forth in *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, *2 (D. Colo. March 30, 2006) and calling upon Colorado courts to weigh the following factors when considering a stay of discovery:

> (1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Id.*

### B.   A Stay of Discovery is Warranted Under the Facts of this Case

In this case, each of these above five factors weighs in favor of YTZ's objections.

#### 1.   There is no prejudice to plaintiff under the facts of this case

This dispute arose after QuiBids accused Belcaro of fraudulently selling it leads based on hijacked traffic. After the accusation was leveled, rather than meet QuiBids' demands, as an apparent strategic move, Belcaro sued QuiBids for declaratory relief. Shortly thereafter, QuiBids and Belcaro resolved their dispute, leaving RRM[1] and YTZ in the case as purported indemnitors for Belcaro's costs of redressing its own fraudulent conduct through an affirmative action. However, indemnity is not available where QuiBids never asserted a claim against Belcaro and now cannot do so.

Here, there is no urgency to Belcaro's interest in prosecution of this action. All it seeks is to recoup certain moneys—apparently those incurred in prosecuting its affirmative claims against QuiBids to settlement. Furthermore, there is no prejudice to Belcaro from having the

---

[1]      Apparently, the claims by and between Belcaro and RRM have now also been settled. On September 9, 2013, Belcaro filed an unopposed motion for dismissal with prejudice of RRM. *See* Doc. 42. On October 11, 2013, the Court entered its Order dismissing RRM from this action with prejudice. *See* Doc. 44.

Court first adjudicate the question of whether Belcaro has stated claims upon which relief can be granted before giving Belcaro leave to conduct jurisdictional discovery. This factor clearly weighs in favor of staying all discovery until the Court resolves YTZ's 12(b)(6) challenges.

### 2. *The burden of subjecting YTZ to jurisdictional discovery is extraordinary*

The second factor easily favors a stay of all discovery. Again, YTZ—a Canadian company—is not a party to the Master Agreement upon which Belcaro solely relies for jurisdiction and service by certified mail. Separately, even if jurisdiction did exist–which it does not–the Complaint fails to state a claim upon which relief can be granted as to YTZ, particularly because any claims by QuiBids against Belcaro have already been dismissed with prejudice. The lack of cognizable claims asserted by Belcaro shall be addressed in more significant detail in Section III below.

### 3. *It would be more convenient to the Court to stay all discovery until ruling on YTZ's 12(b)(6) motion*

The third factor is met as deferring all discovery would obviate the need for the Court to adjudicate any forthcoming discovery disputes. Again, Belcaro's claims cannot survive a 12(b)(6) challenge—no jurisdictional discovery will salvage them. However, adjudicating jurisdictional discovery disputes will necessarily burden the Court.

### 4. *The fourth and fifth factors militate in favor of staying all discovery*

And, factors four and five, to the extent implicated here, are also met as resources of both YTZ's personnel and the Court would be conserved by the stay. In sum, Colorado courts routinely validate a defendant's right to avoid the burden and expense of discovery where a dispositive motion may fully resolve a case. For instance in *McCarter v. Potter*, 2010 WL 148258, 2 (D. Colo. 2010), the Court stayed discovery where a pending motion to dismiss

presented a threshold challenge to the case proceeding. *Id.*; *see also Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.,* 201 F.R.D. at 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'" The imposition of a stay pending a decision on a dispositive motion that would fully resolve the case "furthers the ends of economy and efficiency, since if [the motion] is granted, there will be no need for discovery.")  Such a dispositive motion has been asserted here by YTZ. The merit of the 12(b)(6) arguments should therefore be addressed prior to subjecting a small Canadian company to the extraordinary expense of the proposed discovery in Colorado.

III.   **BELCARO HAS FAILED TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

A.   <u>The Settlement Between QuiBids and Belcaro Moots Any Dispute As to the Duty to Defend or Indemnify Belcaro From a Claim *By* QuiBids *Against* Belcaro</u>

Again, the impetus for Belcaro's Complaint was QuiBids' accusation that Belcaro's products and services are fraudulent and amounted to Belcaro unlawfully accessing computers in violation of the Computer Fraud and Abuse Act. Compl. ¶¶ 1 & 19. Belcaro made the tactical decision to take the offensive against Quibids, *see* Compl. ¶¶ 1 & 19, and beat it to the courtroom.

Significantly, after filing its Response to YTZ's motion to dismiss on September 3, 2013, on September 5, 2013, Belcaro and QuiBids filed a stipulation for dismissal with prejudice of QuiBids. On September 9, 2013, the Court granted the stipulation of dismissal with prejudice of QuiBids.

In its Response, Belcaro did not challenge YTZ's argument that Belcaro is not entitled to

seek indemnification for any intentional or fraudulent conduct. Rather, it characterized its claims

as follows:

> Despite YTZ's suggestion to the contrary, SAH does not seek indemnification for
> any intentional or fraudulent conduct. SAH's Complaint sought declaratory relief
> **with respect to all claims that QuiBids was asserting against SAH**, which
> included claims for negligence, negligence per se, unjust enrichment, and
> restitution, among others. (*See* Compl. ¶ 35.) Moreover, the Complaint expressly
> denies liability as to all claims …

Resp. to Mot. to Dismiss, p. 15 (emph. added).

> The Complaint, for its part, incorporates the following language:

> 35.   Specifically, QuiBids has threatened to file suit alleging the following claims
> in  connection  with  the  redirect  feature  of  SAH's  Toolbar:    fraud,  deceit,
> negligence,  negligence  per  se,  unjust  enrichment,  restitution,  money  had  and
> received,  disgorgement,  tortious  interference,  malicious  wrong,  conversion,
> equitable estoppel, 18 U.S.C. § 1030 (CFAA), 15 O.S. §§ 751-765 (Oklahoma
> Consumer  Protection  Act),  punitive  damages,  declaratory  judgment,  and
> injunctive relief.

> 36.   Considering  all  circumstances,  including  but  not  limited  to  the  current
> business environment in which SAH operates, the controversy between the parties
> is substantial and adversely affects both parties' legal interests in a manner that is
> both real and immediate.

> 37.  Furthermore, SAH has a reasonable apprehension that it faces future litigation
> brought by QuiBids.  On information and belief, QuiBids has been accusing SAH
> of fraud since January 2013.  But SAH does not know the actual timing of any
> potential litigation on the part of QuiBids.

> 38.   SAH seeks a judicial determination as to the parties' rights and obligations in
> connection with this dispute about SAH's affiliate marketing procedures, and a
> determination that SAH has not committed any torts against QuiBids or violated
> the CFAA or any related statutes.

Compl. ¶¶ 35 -38.

The fact is QuiBids has not and cannot now assert any of its threatened claims against Belcaro. QuiBids never filed suit against Belcaro, never asserted counterclaims in the case and cannot file them now given the stipulated dismissal.  At this juncture, it is entirely immaterial whether the conduct that QuiBids accused Belcaro of was for intentional wrongful acts or for negligent ones. Any costs incurred by Belcaro result from its strategic decision to initiate this action—not from defending any claims for which PPX or YTZ  may have a duty to indemnify pursuant to the Master Agreement.  The settlement of the dispute between QuiBids and Belcaro and the attendant dismissal with prejudice conclusively moot any indemnification obligations arising from a claim by QuiBids against Belcaro.

**B.** **Even if the Dispute Between QuiBids and SAH Were Not Resolved, Belcaro Has Failed to State a Claim Upon Which Relief Can Be Granted**

Where a party seeks to enforce an indemnification provision, the provision must state with specificity the intentional or wrongful conduct which warrants indemnification.  Assuming, *arguendo*, that YTZ may be subject to the Master Agreement, the indemnification provision does not warrant indemnification for the tortious conduct alleged by QuiBids against Belcaro.

### 1.   *The Indemnity Clause does not address the complained of conduct*

The indemnity provision Plaintiff seeks to enforce does not reach the conduct for which Plaintiff seeks indemnification.  The indemnity clause provides the following:

> **Indemnification.**   Advertiser agrees to defend, indemnify and hold harmless [Belcaro] and its officers, directors, employees and agents from any and all claims, losses, liabilities, damages, costs and expenses of any nature (including reasonable attorneys [sic] fees) relating to or arising out of (a) the promotion and distribution of the Offers; (b) any and all copy and images supplied by Advertiser and [Belcaro]'s user thereof; and (c) Advertiser's breach of this Agreement.

Compl. Ex. 1 ¶ 8. The term "Offers" is defined in the Master Agreement as follows:

> [Belcaro] shall promote Advertiser's offers ("Offers"), including both Advertiser's direct offers as well as offers for which Advertiser is acting on behalf of third party advertising agencies....

Compl., Ex. 1 ¶ 1.

Belcaro's indemnification claim is predicated on sub-section (a) of the indemnification clause, which is inapplicable here. In its demand letters, attached as Exhibit A to the Declaration of Eugene Rome submitted herewith, QuiBids asserted that Plaintiff was <u>fraudulently charging</u> for direct traffic by means of <u>hijacking and redirecting</u> the same traffic that was initiated organically. As a result, QuiBids asserts that Plaintiff's fraudulent conduct constituted tortious interference and caused it significant economic harm. *Id.* QuiBids' allegations constitute the basis for Plaintiff's claim for indemnification against YTZ. Compl. ¶¶ 31-32.

QuiBids' allegations of Belcaro's intentional torts are not claims which arise out of the promotion and distribution of the Offers. Sub-section (a) of the indemnification provision concerns instances where the offers are unauthorized or where a promotional offer is not honored by the issuer and Plaintiff is named in a false advertising claim. This dispute has <u>nothing</u> to do with the Offers and, rather, is predicated upon Plaintiff's fraudulent charges and its hijacking and redirecting of traffic. The Offers are not at issue.

"[T]he duty to indemnify is only triggered where the [provision] actually covers the alleged harm." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 300 (Colo. 2003); *see also Constitution Assocs. v. New Hampshire Ins. Co.,* 930 P.2d 556, 563 (Colo.1996) (same). Here, the provision by its own terms does not apply to the harm occasioned by Plaintiff's fraudulent billing rather than its advertisement of the Offers. Therefore, this claim should be dismissed as to YTZ upon consideration of the Motion to Dismiss.

## 2. *The Indemnification provision Does Not Even Create an Indemnification obligation for Belcaro's Negligent Conduct*

"'[I]ndemnity contracts holding indemnitees harmless for their own negligent acts must contain clear and unequivocal language to that effect.'" *Public Serv. Co. of Colo. v. United*

-10-

*Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1283 (Colo.1992) (*quoting Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 426 (Colo.1988)). "'[A] contractual provision should not be interpreted to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties.'" *Id.* (*quoting United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)). "Ambiguities will be resolved against the party seeking indemnity." *Williams*, 749 P.2d at 426.

A contract for indemnification must be sufficiently clear as to the specific acts entitling indemnification to the contracting parties:

> [T]he broad, all-inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary requirement on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit.

*Williams*, 749 P.2d at 246–47 (citation omitted). The *Williams* court found "[t]his reasoning applies with greater force when the statement is not only broad but ambiguous." *Id.* In holding that the district court correctly found no contract of indemnity, the *Williams* court concluded that "the burden of indemnity is so onerous that we hesitate to impose it unless the language used clearly requires such a result." *Id. Williams* and the other cases construing indemnity agreements look to the contractual language itself to see if the language clearly and unequivocally indicates an intent to indemnify, under a strict construction standard. While the parties' intent is relevant to this determination, it is relevant only insofar as the intent is expressed in the contract itself. *U.S. Brass Corp. v. Dormont Manufacturing Co.*, 242 Fed. Appx. 575, 577 (10th Cir. 2007).

Belcaro attempts to distinguish *Williams* in its Opposition to Motion to Dismiss, arguing that in *Williams* the purported indemnitor provided too vague of a statement as to indemnity: "Don't worry about it – we'll take care of it if anything happens." *Williams*, 749 P.2d at 426.

Yet, multiple subsequent cases have held that written contractual provisions must too survive the above-recited standard of ensuring that the court is "firmly convinced" that the duty to indemnify an indemnitee from its own negligence is the intention of the parties.

For instance, in *U.S. Brass Corp. v. Dormont Mfg. Co.* L 894887, 2 -3 (D.Colo. 2006), much like here where SAH is seeking indemnity in connection with the "promotion and distribution of the offers," the party sought indemnity upon a contractual provision ascribing liability for "all obligations associated with being the manufacturer of the product." The court in *U.S. Brass Corp.* declined to find a duty to indemnify, reasoning:

> The Colorado Supreme Court holds that "[w]hile indemnity contracts are generally construed to effectuate the parties' intentions, under the rule of strict construction, 'indemnity contracts holding indemnitees harmless for their own negligent acts must contain clear and unequivocal language to that effect.'" *Public Serv. Co. of Colorado v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1283 (Colo.1992) (*quoting Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 426 (Colo.1988)). "'[A] contractual provision should not be interpreted to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." ' *Id.* (*quoting United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)). "Ambiguities will be resolved against the party seeking indemnity." *Williams*, 749 P.2d at 426.

*U.S. Brass Corp. v. Dormont Mfg. Co.* L 894887, 2 -3 (D. Colo. 2006).

Finally, the *U.S. Brass* court found that a clause stating, "I agree to ... indemnify [defendants] ... for any injury or death caused by or resulting from me or my family's participation [in the rafting activity]" did <u>not</u> obligate the plaintiff to indemnify defendants for the attorneys' fees and other expenses incurred in connection with the lawsuit because the language did not clearly and unequivocally state that the signor agreed to pay the fees and costs associated with such a lawsuit. *Id.* (citing *Lahey v. Covington*, 964 F.Supp. 1440, 144 (D.Colo.1996), *aff'd*, 113 F.3d 1246 (10th Cir.1997)). Here, the indemnification clause does not

clearly and unequivocally state that PPX—or YTZ—must pay attorneys fees and costs resulting from Belcaro's affirmative prosecution of claims against QuiBids.

Another case which defines the parameters of construction of indemnity provisions is *Lahey v. Covington,* 964 F. Supp. 1440 (D. Colo. 1996). In *Lahey,* plaintiff Lahey signed an indemnity provision prior to taking a white-water rafting trip during which she suffered certain injuries. She proceeded to sue the white-water rafting company and guide for her injuries. The company filed a counter-claim and further sued Lahey's brother, Mobilian. In its suit, the defendants and counter-claimants sought indemnity for attorneys' fees they incurred in connection with the defense and prosecution of their case against Lahey and Mobilian. The district court rejected the request, reasoning:

> Here, the relevant language provides, "I agree to ... indemnify [defendants] ... for any injury or death caused by or resulting from me or my family's participation*1447 [in the rafting activity]." That language does not *clearly and unequivocally* state that the signor agrees to pay the attorney's fees and costs associated with a lawsuit such as this. Thus, I conclude that the language of the indemnity clause does not obligate plaintiff or Mobilian to indemnify defendants for the attorneys' fees and other expenses they incur in connection with this lawsuit. *See Public Serv. Co. of Colo.,* 829 P.2d at 1284; *Williams,* 749 P.2d at 426.

*Lahey v. Covington,* 964 F. Supp. at 1447.

The clear authority indicates that a clause seeking to indemnify a party from its own negligence must clearly state as much. Thus, even if sub-section (a) applied to the fraudulent charges for the Offers—which it does not—it does not apply to YTZ because it does not reach the issue of indemnity for Belcaro's own wrongful acts, be they negligent or intentional. *Public Serv. Co. of Colo.*, 829 P.2d at 1283 (quoting *Williams,* 749 P.2d at 426).

Furthermore, the clause at issue must specifically address the nature of the suit where

defense or indemnity is to be provided. Here, the clause does not provide that the proffered indemnitor – be it PPX or YTZ – has an obligation to fund the prosecution of an action by Belcaro against third parties. These defects in the subject clauses render the provision unenforceable.

### 3.   *The Indemnification Provision does Not apply to Plaintiff's own Intentional Misconduct and Fraud.*

Belcaro's claim for indemnification is based on QuiBids' accusations of fraud and tortious conduct. Compl. ¶¶ 19, 32. Thus, Belcaro is, by its own admission, attempting to obtain indemnity in connection with claims that it has engaged in fraudulent conduct. No indemnity for intentional wrongful conduct may be provided under Colorado law.

> Colorado's public policy appears to prohibit indemnification for intentional torts:
>
> > Assuming *arguendo* that a party could contractually insulate itself from liability for fraud and other intentional torts without running afoul of the public policy of the state of Colorado, the language of the contract would have to be much more specific than that on which defendants rely here. *See* [*Keller v. A.O. Smith Harvestore Products, Inc.,* 819 P.2d 69, 73 (Colo. 1991)] ("A contract provision purporting to prohibit a party to the contract from asserting a claim of negligent misrepresentation must be couched in clear and specific language.").

*Bridgwater Apartments, LLC v. 6401 South Boston Street, Inc.*, 2006 WL 295385, *3 (D. Colo. 2006); *see also Sundance Servs., Inc. v. Roach*, 2011 WL 3608014,*4 (D.N.M. July 7, 2011) (stating that "[o]ther state courts have held that indemnity, in general, does not apply to intentional torts[,]" *citing First American Corp. v. AlNahyan,* 948 F.Supp. 1107, 1119 (D.D.C.1996) (intentional activities, as opposed to negligent acts, deprive party of right to indemnification); *Piscitelli v. Metro North Commuter RR,* 1995 WL 541806 *4 (Conn.Super.) (unpublished decision) ("[I]ndemnity requires a finding of negligence...."); *Canavin v. Naik,* 648 F.Supp. 268, 269 (E.D.Pa.1986) (under Pennsylvania law, indemnity is not available to

intentional tortfeasors "because it would permit him to escape liability for his own deliberate acts.").

The limited indemnity provision here is entirely silent on the issue of indemnity for intentional acts. Consequently, under Colorado law, Belcaro has no right to indemnity.

**C.     Conclusion**

Belcaro has no claim against YTZ for its negligence given the plain realities that Belcaro deceived YTZ to the same degree as it did QuiBids. Separately, YTZ had no relationship with QuiBids pursuant to which it owed any duty to apprise QuiBids as to Belcaro's fraudulent practices.

In sum, Belcaro's claims against YTZ simply cannot survive a 12(b)(6) challenge for the following reasons: (1) there is no "claim" asserted against SAH nor can one be asserted now by QuiBids; (2) the indemnity provision in the subject agreement does not address the complained of conduct consisting of Plaintiff's sending of fraudulent billing and fraudulent traffic; (3) the indemnification provision does not address negligent acts by the party seeking indemnity; and (4) no indemnification is available for intentional wrongful acts such as conversion and fraud. Consequently, YTZ should not be subjected to discovery which will not save Belcaro's fatally flawed claims.

**IV. IF JURISDICTIONAL DISCOVERY IS GRANTED, IT SHOULD BE LIMITED TO ONE RULE 30(B)(6) DEPOSITION OF YTZ TO TAKE PLACE AT A LOCATION CONVENIENT TO YTZ— LIKELY IN ONTARIO, CANADA.**

As the foregoing discussion conclusively demonstrates, Belcaro has failed to state claims upon which relief can be granted. Adding insult to injury, it seeks leave of this Court to allow it to conduct broad discovery, consisting of interrogatories, inspection demands and no less than

three (3) separate depositions. The law is clear: "In the absence of exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party." *Metrex Research Corp. v. U.S.*, 151 F.R.D. 122, 125 (D. Colo. 1993). Thus, to the extent this Court is inclined to allow jurisdictional discovery, it should be limited to a single 30(b)(6) deposition of YTZ in Ontario, Canada.

## V. BELCARO'S REQUEST FOR AN EXTENSION OF TIME TO RESPOND TO YTZ'S MOTION TO DISMISS SHOULD BE DENIED

As the foregoing discussion demonstrates, neither the assertion of personal jurisdiction over YTZ by this Court nor a finding of adequate service of process upon YTZ will salvage the fatal defects of the claims asserted by Belcaro against YTZ. Consequently, this Court should decline the request for an extension of time to respond to YTZ's Motion to Dismiss based on the articulated need to conduct jurisdictional discovery since the identified discovery cannot correct the deficiencies of Belcaro's claims challenged under Rule 12(b)(6). That challenge has been fully briefed and is ripe for adjudication by the Court. The extension request should be denied.

## VI. CONCLUSION

Plaintiff's Motion for Jurisdictional Discovery and its Opposition to the Motion to Dismiss fail to demonstrate that the claims brought can proceed past the pleading stage. Because Belcaro has failed to state claims upon which relief may be granted, the Court should deny the Motion for Jurisdictional Discovery and the request for an extension of time to respond to YTZ's Motion to Dismiss.

DATED: October 18, 2013

Respectfully submitted,

s/ Eugene Rome
Eugene Rome,
Elizabeth Wang
ROME & ASSOCIATES, A.P.C.
2029 Century Park East, Suite 1040
Los Angeles, CA 90067
Telephone: (310) 282-0690
Email:  erome@romeandassociates.com
        isaura@romeandassociates.com

and

Lucas T. Ritchie
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: (303) 573-1600
Email: lritchie@joneskeller.com
       agoldhamer@joneskeller.com

*Attorneys for Defendant YTZ International Inc.*

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jennifer A. Golinveaux, Esq.
jgolinveaux@winston.com

Michael S. Elkin, Esq.
melkin@winston.com

Erin R. Ranahan, Esq.
eranahan@winston.com

John M. Tanner, Esq.
jtanner@fwlaw.com

*Attorneys for Plaintiff*

s/ Renae K. Mesch
Renae K. Mesch