1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF COLORADO

3      Case No. 13-cv-01424-MSK-BNB

4      _____

5      BELCARO GROUP, INC.,

6           Plaintiff,

7      vs.

8      YTZ INTERNATIONAL, INC.,

9           Defendant.

10     _____

11          Proceedings before BOYD N. BOLAND, United States

12     Magistrate Judge, United States District Court for the

13     District of Colorado, commencing at 9:03 a.m., October 24,

14     2013, in the United States Courthouse, Denver, Colorado.

15     _____

16          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17     ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18     _____

19                    APPEARANCES

20          Jack Tanner and Erin Ranahan, Attorneys at Law,

21     appearing for the plaintiff.

22          Luke Ritchie, Attorney at Law, appearing for the

23     defendant.

24     _____

25                  MOTIONS HEARING

```
 1                    P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE COURT:  We're here this morning in Case
 6    13-cv-1424, Belcaro Group against YTZ International on the
 7    plaintiff's motion for jurisdictional discovery and a
 8    request-- which I have construed from the response to the
 9    motion to dismiss-- as seeking additional time within which
10    to file a supplemental response.  May I have appearances,
11    please.
12              MR. TANNER:  Good morning, Your Honor.  Jack
13    Tanner, Fairfield & Woods, on behalf of the plaintiff.
14              THE COURT:  Thank you.
15              MS. RANAHAN:  Good morning, Your Honor.  Erin
16    Ranahan for the plaintiff.
17              THE COURT:  Thank you.
18              MR. RITCHIE:  Good morning, Your Honor, Luke
19    Ritchie of Jones & Keller appearing here today on behalf of
20    YTZ International, the sole remaining defendant in the case.
21              THE COURT:  Thank you.  I've read the motion and
22    response, looked at the supporting materials, reviewed the
23    cases that are cited.  Mr. Tanner, will you address the
24    motion or will
25    Ms. Ranahan?
```

1            MR. TANNER:  Ms. Ranahan will.

2            THE COURT:  Ms. Ranahan, I'll hear anything more

3    you have to say in support of your motion.

4            MS. RANAHAN:  Thank you, Your Honor.  Just this--

5            THE COURT:  Go to one of the microphones.

6            MS. RANAHAN:  Oh, okay.

7            THE COURT:  That's the only record that is made.

8            MS. RANAHAN:  Okay.  Well, just as far as the

9    brief that was just filed last week, it was-- the support

10   that was cited as far as the stay of discovery, all of those

11   cases that would merit discovery, none of them were actually

12   addressing jurisdictional discovery, which is the limited

13   discovery that we're seeking here.  And also, Your Honor, the

14   brief basically requested that Your Honor address 12(b)(6)

15   first before addressing jurisdictional arguments, which seems

16   to be reversed given that they're challenging service and

17   jurisdiction to begin with.

18            So if they're remaining-- to challenge those--

19   those-- jurisdiction itself, then we should be allowed to

20   prepare and conduct discovery into those challenges.  If

21   defendant does not want to challenge jurisdictional service

22   and wants Your Honor to reach the 12(b)(6) first, then we're

23   happy to not go forward with the jurisdictional discovery,

24   but as long as that's still pending, they haven't cited any

25   authority that would argue against that we have a right to

1    conduct some jurisdictional discovery, especially given the

2    very factual intensive nature of the challenges that have

3    been made, including, you know, whether PPX just continued to

4    operate as YTZ.  And I think if you've looked at the e-mails

5    that we've attached, it does seem like they seamlessly

6    continued to work with us as PPX and then changed their name.

7         So there are some factual questions that we'd like

8    to investigate if the jurisdictional challenges stand.  I

9    couldn't tell, though, from the reply brief whether they're

10   now waiving those.

11        THE COURT:  Tell me, how long do you think it

12   would require to conduct the written discovery and I think it

13   was three depositions, which--

14        MS. RANAHAN:  Correct, Your Honor.

15        THE COURT: -- you proposed.

16        MS. RANAHAN:  So we-- we've already served-- well,

17   we attempted to serve it with the cover letter.  I understand

18   that we were waiting for a ruling before they would-- any

19   response would kick in, but we've served it in the beginning

20   of September, and I think that we could-- we either expedite

21   the responses or they could maybe 21 days after respond and

22   then give us maybe 60 days, but that does run up into

23   December, and I don't know if maybe we should push it to

24   January just given the holidays.

25        But what we would like, ideally, is to have time

1    to get the responses.  If there's any deficiencies in those

2    responses, bring them before the Court so that we can resolve

3    any issues with, you know, motion to compel, and then have

4    time to take the three depositions.

5           And the three depositions, Your Honor, one of them

6    is the declarant that they submitted for their motion to

7    dismiss, which makes a lot of factual statements, some of

8    which we've already disputed.  Then there's a second, which

9    is the employee that came with PPX and then now YTZ, and he

10   was the one that we were dealing with, the Tobia Adam, and

11   then there's the 30(b)(6).

12          So that's the basis for-- and they're surely

13   welcome to designate those two as the 30(b)(6), and it would

14   make only two, but those are the three that we're going

15   after.  And we've also-- we've also served the written

16   discovery, or at least provided it to them.  So if we want to

17   go quicker and try to get 60 days, as long as maybe we could

18   expedite the response time.

19          THE COURT:  It seems to me that 60 days would be

20   sufficient, assuming that full compliance with the discovery

21   obligations is made--

22          MS. RANAHAN:  Right.

23          THE COURT:  -- and you find no reason to bring a

24   motion to compel.  So if I take the world as it exists today,

25   and the assumption that lawyers and parties will do what the

1      law requires, then 60 days should be sufficient?

2            MS. RANAHAN:  Correct.  Right.  But knowing what

3      we know about how discovery works, I would imagine we may

4      have-- or at least I'd like to reserve the right to

5      potentially challenge any deficiencies that we find with the

6      responses.

7            THE COURT:  Thank you.

8            MS. RANAHAN:  Thank you.

9            THE COURT:  Mr. Ritchie.

10           MR. RITCHIE:  Good morning, Judge.  I can concede

11     that none of the cases that were cited in our brief

12     requesting a denial of jurisdictional discovery actually

13     dealt with jurisdictional as opposed to standard or typical

14     discovery, but just as unique as that is, none of the cases

15     cited by the plaintiff in this case dealt with this unique

16     situation where there was a simultaneous Rule 12(b)(6) motion

17     pending along with a motion to dismiss based on personal

18     jurisdiction or sufficiency of service of process.

19           THE COURT:  Well, I don't know that they cited it,

20     but among the cases they sight, there's a reference to my

21     case, the Grynberg against Ivanhoe case, which dealt with

22     that.

23           MR. RITCHIE:  So in that case, there was an a

24     corresponding 12(b)(6) motion?

25           THE COURT:  Correct.

1          MR. RITCHIE:  Okay.  I didn't-- I didn't realize

2     that, but I appreciate that.  But I do think that, regardless

3     of that history, this is a unique situation, and we don't

4     have any authority directly on point here in Colorado, but we

5     have cited to the Qualcomm decision out of the Southern

6     District of California, and that case basically sets out this

7     preliminary peak analysis that a Court can go through to take

8     a preliminary peak at an underlying dispositive motion in

9     advance of determining whether or not to proceed with

10     discovery, albeit, traditional discovery in that case and the

11     other cases that we've cited.

12          But here, given this very unique situation where

13     we are now the sole remaining defendant, we have indemnity,

14     the plaintiff, Shop At Home, who, rather than having any

15     claims formally asserted against it, rather than being--

16     having responding to claims filed in a lawsuit, they took the

17     initiative.

18          They tactically decided to pursue claims against

19     the party who had threatened litigation.  They beat them to

20     court.  They did it here in Colorado for tactical reasons,

21     but as a-- and as we all know, since that time, they've now

22     resolved these untested claims.

23          All we know about the claims that QuiBids'

24     asserted against Shop At Home, or at least threatened to

25     assert against Shop At Home, are that they deal with

```
 1   intentional conduct, they talk about the Computer Fraud and

 2   Abuses Act, they talk about fraud.  The whole thing is based

 3   on tool bar functionality that highjacked users that were

 4   organically driven to QuiBids, instead of QuiBids getting

 5   credit for that, Shop At Home would get credit as though they

 6   had directed that traffic.

 7            I mean, those are the intentional fraud-type

 8   claims that were threatened.  All we know is that Shop At

 9   Home disputed those claims, and in their response to our

10   motion to dismiss, they state clearly that they dispute any

11   liability owing to QuiBids.  They dispute any claims that

12   QuiBids has asserted.

13            But beside-- or despite the fact that they

14   vehemently dispute those claims, we now know that they have

15   settled all claims by and between the two.  They've been

16   dismissed with prejudice.  We don't know what the terms of

17   that settlement are.  We don't know whether there was any

18   admission of liability.  All we know is that we are now being

19   asked-- we have been dragged-- they're trying to drag this

20   small Canadian company into court in Colorado to fund-- to

21   apparently fund their affirmative prosecution of claims that

22   they have now in a month and a half of litigation dismissed

23   with prejudice.  That is a unique situation.

24            The other unique situation here is just the

25   strength of what we believe, respectfully, to be the strength
```

```
 1    of our 12(b)(6) motion, where they are seeking

 2    indemnification from a very straightforward indemnity clause

 3    that deals absolutely not with any sort of intentional fraud,

 4    any sort of negligence.  I mean, it's a very focused

 5    indemnity clause.  And I know it's in the record, I don't

 6    think I need to repeat it here, but it deals with the authors

 7    of certain services, and those aren't even the services at

 8    issue here, Your Honor.

 9              Given that, given the precedent in Colorado that

10    exculp-- well, indemnity provisions in terms of both

11    negligence and wrongful acts should be unequivocal and clear

12    in the indemnity provision, we think we have a very strong

13    case with our 12(b)(6) motion.

14              So it just seems to us that it would make sense--

15    and, again, I can't sight the Court any direct authority

16    requiring this, but I ask the Court to consider taking a peak

17    at the 12(b)(6) motion, and if it will, indeed, resolve this

18    case, like any other dispositive motion, then we can forego

19    the tremendous prejudice and burden that our small Canadian

20    client-- my small Canadian client faces by being dragged here

21    to Colorado, not only to participate in these proceedings,

22    but to make what has been-- or requested, let's make it

23    clear, is a 30(b)(6) deposition of the company to take place

24    here at the offices of Fairfield & Woods in Colorado, and

25    that Canadian company has all of its offices, all of its
```

1    employees, all of its officers, all of its records in

2    Ontario, Canada.

3          They've requested to drag the CEO of the company,

4    Sam Dennis, who is the declarant-- although I take issue with

5    the declaration being submitted solely on behalf of him

6    personally.  He was speaking on behalf of the company when he

7    made the declaration.  And as a result of that, I see no

8    reason why he, too, could be deposed for this limited

9    jurisdictional issue.

10          Any fact issues that were raised dealing with

11    personal jurisdiction were raised by that declaration and can

12    be resolved through a properly-noticed 30(b)(6) deposition.

13    So, again, the imposition of dragging the CEO of the company,

14    a resident domiciled-- or a resident of Ontario, Canada, here

15    to Colorado is just overreaching.

16          THE COURT:  Now, suppose I--

17          MS. RANAHAN:  There's something--

18          THE COURT:  Suppose I accept your invitation to

19    order that the deposition occur, but in Canada, is there any

20    problem with that, any Canadian defenses to discovery which

21    YTZ or the individual deponents would raise, or do they agree

22    that they'll sit for depositions in Canada?

23          MR. RITCHIE:  Your Honor, I'm afraid to tell you

24    that I cannot answer that.  I haven't looked at it.  What I--

25    what I am prepared to say here today, that is, if depositions

1    go forward and it's our choice of location, that I've got

2    authority to say that that location would be Ontario, Canada,

3    as opposed to the offices of the lead counsel in this case,

4    Eugene Rome, who is in Los Angeles, California.

5          But that's-- that's the only-- that's the limit of

6    my discussion with them.  So I don't-- frankly, I don't-- and

7    I don't want to suggest that I have authority to say that

8    they won't oppose that, if it's ordered.

9          But what I can tell you is that one 30-- one

10   well-noticed 30(b)(6) deposition should be able to accomplish

11   what these other proposed three depositions and 18 requests

12   for production of documents, very broad, touching on-- well,

13   let me-- 18 requests for production, 17 requests for

14   admissions, I guess.

15         THE COURT:  Interrogatories.

16         MR. RITCHIE:  I'm sorry, 17 interrogatories, 18

17   requests for production.  All of them touch on protective

18   trade secret and potentially purport-- potentially touch on

19   trade secret and proprietary information.  You're asking for

20   clients and funds in the state of Colorado and so on and so

21   forth, and that is an awful lot to subject any defendant to

22   at this preliminary stage, particularly a small Canadian

23   corporation that really has no contacts with the state of

24   Colorado.

25         THE COURT:  Well, you've said that now, so it's

1    fair game for me to ask you.

2              MR. RITCHIE:  Sure.

3              THE COURT:  It's unusual for some entity,

4    especially a small entity, to pay $100,000 on behalf of what

5    your clients affiant says it had no affiliation at all.  Why

6    in the world would they do that?

7              MR. RITCHIE:  Well, what I-- I mean, what I can

8    say about that-- and I-- I mean, I can't answer the question

9    conclusively, but what I can say conclusively is that in the

10   aff-- the declaration of the representative of Shop At Home

11   that purportedly establishes what you have just recited to

12   me, there's glaring omissions of details that would establish

13   that conclusively.

14             They don't say that the money was transferred to

15   an account here in Colorado.  They don't indicate a bank in

16   Colorado or elsewhere.  They don't--

17             THE COURT:  So this--

18             MR. RITCHIE:  They don't even say, Your Honor,

19   that the funds came from YTZ International, Inc., and the

20   e-mail chain attached as exhibits to that declaration, it's a

21   Laurel-- or a Laurel Berkman (phonetic spelling), I believe,

22   or Blackman, but his signature line, which they place

23   emphasis on indicates YTZ Management, Inc., which is not the

24   defendant here, YTZ International, Inc.

25             In addition to that, it lists as an address an

1    office space in Ontario, Canada, that is not the-- the office

2    space of the defendant in this case, YTZ International, Inc.

3            THE COURT:  Well, are you saying that the

4    defendant here, YTZ International, Inc., did not make a

5    payment to Belcaro of slightly in excess of 100-- of

6    $100,000?

7            MR. RITCHIE:  I cannot tell you the distinction

8    between YTZ, Inc.-- YTZ Management, Inc., and YTZ

9    International, Inc.  I wish I had that information, but I

10    don't.

11            I think what is established in the declaration of

12    Sam Dennis, though, is that this entity that is now in this

13    case YTZ International, Inc., hadn't even come into business.

14    It hadn't transferred from this shelf organization and became

15    an active operation until after this.

16            My assumption, then, is that YTZ Management, Inc.,

17    was not the same entity.  It may be some related entity or

18    subsidiary entity, and I just have to tell you again, I

19    apologize, but I don't know the answer to that, and I don't

20    want to mislead the Court.

21            I'm just noting that there is a distinction there,

22    and it seems to me that if they had this kind of evidence

23    that would establish conclusively that a payment was sent to

24    a Colorado bank account from YTZ-- the defendant in this

25    case, YTZ International, Inc., that it would have been very

1    easy to include in this declaration of the representative of

2    Shop At Home any number of exhibits that would have

3    established that that would be in their position--

4    possession, and I just point to the Court, that sort of thing

5    is conspicuously absent from the declaration and from any of

6    the allegations contained in either the complaint or in the

7    response to the motion for jurisdictional discovery.

8              THE COURT:  You like the strength of your 12(b)(6)

9    motion, you say, but you have not said-- and I want to make

10   sure that I'm right about this-- you have not said that your

11   client is waiving the jurisdictional and service defenses.

12             MR. RITCHIE:  No.  No, Your Honor.  What we would

13   propose-- and this is-- this all boils down to the Court's

14   discretion.  I think that Shop At Home has cited authority

15   suggesting that jurisdictional discovery is mandatory when

16   factual issues have been raised, and I can't disagree with

17   that 10th Circuit authority, but I can tell you that that

18   continues-- the case continues by stating that it's not an

19   abuse of discretion to deny jurisdictional authority unless

20   it would prejudice the plaintiff.

21             And here there is no prejudice by the fact that

22   the 12(b)(6) motion is going to terminate the claims.  We

23   believe that those claims are dead in the water based on the

24   12(b)(6).

25             THE COURT:  Well, but--

1          MR. RITCHIE:  So, getting back-- I didn't really

2     answer your question, and I will, if you'd like.

3          So we don't want to waive our current claims.

4     What we are suggesting is that the Court take a preliminary

5     peak at the 12(b)(6) motion, and if it can resolve that in

6     the near future, then it would-- it would get-- get-- do away

7     with the need to proceed with this very intrusive and

8     extensive jurisdictional discovery aimed at a foreign

9     corporation.

10          THE COURT:  The problem-- isn't it true, the

11     problem with your proposal is, suppose I grant your 12(b)(6)

12     motion, say that the complaint fails to state a claim, and

13     then Belcaro says, "All right.  You were right all along,

14     YTZ.  No personal jurisdiction.  We'll sue you in Ontario"?

15          MR. RITCHIE:  Well, given the posture of this case

16     and the-- I mean, a complaint that deals with a number of

17     allegations completely unrelated to now what we have between

18     two parties, a claim for indemnification and declaratory

19     relief, that makes sense to me, that this case would proceed

20     in Ontario, Canada, and that it would be brought exclusively

21     by Shop At Home against the Canadian entity.  That makes

22     tremendous sense.  And-- and that may be-- I mean--

23          THE COURT:  Well, then, why should I provoke it.

24          MR. RITCHIE:  That may be the result of a

25     dismissal without prejudice.  A dismissal with prejudice, I

1    think, would foreclose that possibility, and we're seeking a

2    dismissal with prejudice.

3           THE COURT:  But it wouldn't, because there's no

4    jurisdiction.  If I lack jurisdiction or Judge Krieger lacks

5    jurisdiction, then her order on the merits is without

6    jurisdiction and no effect-- and of no res judicata or

7    collateral estoppel effect, at least under American law.

8           MR. RITCHIE:  Well, again, I wish that I could

9    answer conclusively for my clients here today, but I can't,

10   but what I can tell you is it seems to me that that would be

11   far more convenient.  Even if this was dismissed with-- with

12   or without prejudice-- and I understand your point, that if

13   the-- if the Court had lacked jurisdiction, they proceed to

14   Canada, I mean, I see the issues that come up if

15   fundamentally if there is no personal jurisdiction.  But I

16   think that that would be preferable than, you know, being

17   forced to continue on in this what we consider to be a

18   misguided suit in Colorado thousands of miles away.

19          And I-- you know, again, I just want to sight--

20   unless you have further questions, I would just like to focus

21   on the extent of these requested interrogatories, requests

22   for production, and depositions, Your Honor.  I'll note that

23   they sight-- Shop At Home cites no authority in their briefs

24   providing for this sort of extended preliminary

25   jurisdictional discovery.

1          And, again, it seems to me that this could all be

2     accomplished, if the Court decides to go that way, it should

3     and could be accomplished through a well-noticed 30(b)(6)

4     deposition to take place in Ontario, Canada.  There's no

5     reason to produce documents and answer interrogatories at

6     this early stage in the juncture.

7          And I would point to the Court the decision,

8     Metrex Research Corp. v. U.S., which is at 151 FRD 122.

9     That's a District of Colorado case from 1993.  And it's

10    Magistrate Judge Borchers, but if Your Honor has not reviewed

11    that case, it is very well-reasoned, and it ultimately

12    concludes what I think is a very well-established principle,

13    and that's that plaintiffs have an awful lot of leeway when

14    it comes to choosing a forum.  They don't have the same

15    leeway when they're trying to-- when they're suing a

16    nonresident defendant and trying to get him to come-- he,

17    she, or it to appear here in Colorado.

18         And in that decision, I'll just quote for the

19    Court the final reasoning, "In the absence of exceptional or

20    unusual circumstances, when a deponent resides at a

21    substantial distance from the deposing party's residence, the

22    deposing party should be required to take the deposition at a

23    location in the vicinity in which the deponent resides, even

24    if the deponent is a party.

25         I think that rationale applies with even greater

18

```
1    force when we're talking about jurisdictional discovery,

2    before the Court has even established personal jurisdiction

3    over the entity.  And I'll note that in a later decision--

4    this reasoning, I think, has been fairly well accepted in

5    this District.

6            In the 2008 case, Hess v. Richardson, Judge

7    Seymour showed his satisfaction with Magistrate Judge

8    Borchers' earlier decision and basically followed it.  He

9    found it to be persuasive and well thought out, and he

10   denied-- in that case, he denied the plaintiff's motion to

11   compel a nonresident defendant living in New Mexico to travel

12   to Colorado for a deposition.  And just so you have the sight

13   on that, it's Hess v. Richardson.  It's an unpublished

14   decision, but it's 2008 Westlaw 6579413 at page 3, and again,

15   it's the District of Colorado, 2008, Judge Seymour.

16           So if the Court is going to go down that route, we

17   strongly urge that the Court take the rational, well-reasoned

18   approach of permitting only one Rule 30(b)(6) deposition to

19   take place at the entity's headquarters in Ontario, Canada.

20           THE COURT:  Is my recollection of geography

21   correct that Ontario is just across the river from Detroit?

22           MR. RITCHIE:  Your recollection is better than

23   what I know of geography, I'm sorry to say.  I'm not sure.  I

24   know it's Toronto, Ontario, and I do believe that that's

25   south--
```

1          THE COURT:  Oh, it's Toronto?

2          MR. RITCHIE:  Yeah, Toronto, Ontario, I believe.

3          THE COURT:  All right.

4          MR. RITCHIE:  I may be wrong.  I don't know the

5     jurisdiction, but--

6          MR. TANNER:  Your Honor, if I could be heard on

7     that.  Ontario's a province.  It's a pretty big province.

8          THE COURT:  There is also a city of Ontario.

9          MR. TANNER:  It's Windsor that's right across the

10    river from Detroit.

11         THE COURT:  Okay.  Thank you.

12         MR. TANNER:  But Toronto's farther east.

13         THE COURT:  Right.

14         MR. RITCHIE:  And I do believe that Toronto is the

15    location.  I can confirm that, if you'll bear with me for

16    just a moment.

17         THE COURT:  It's not far-- Toronto is not far from

18    Rochester, New York.

19         MR. RITCHIE:  That may be.

20         THE COURT:  And probably Buffalo.

21         MR. RITCHIE:  Yeah, Toronto, Ontario.  Forgive me,

22    Your Honor.  I didn't-- I'm trying to get up to date on these

23    number of cases that have been filed, I overlooked checking

24    out the geography of them.

25         THE COURT:  So, Mr. Tanner, do you-- is it

```
 1   accurate that Toronto is near Buffalo or Rochester?  You seem
 2   to know this geography.
 3          MR. TANNER:  It's closer than it is to Detroit, I
 4   know that.  I'm sorry, Your Honor, I don't-- I just
 5   remembered that Windsor is straight across the river from
 6   Detroit.  I've been to Toronto, but I've always flown in, and
 7   it is farther east.
 8          THE COURT:  Thank you.
 9          MR. RITCHIE:  Unless Your Honor has any further
10   questions from me--
11          THE COURT:  I don't believe I do.  Thank you.
12          MR. RITCHIE:  Thank you.  Ms. Ranahan, anything
13   more?
14          MS. RANAHAN:  Thank you, Your Honor.  And just as
15   far as location, I mean, we're open to whatever the Court
16   thinks makes sense as far as location.  We noticed it not
17   knowing where they would want to proceed, but, obviously,
18   we're open to proceeding in Canada, as long as there's no
19   limitation, as you noted, with us actually proceeding there.
20          And just as far as the 12(b)(6), I mean, the
21   12(b)(6), if Your Honor is going to look into that or try to
22   get there before deciding whether service or jurisdiction is
23   proper, it's-- the 12(b)(6) does deal with the merits and
24   things that are not properly subject to a 12(b)(6).  It's the
25   scope of the indemnity clause, it's, you know, the nature of
```

1    the actual claims, the amount of indemnity, I mean, all of

2    these things are-- have to be construed in our favor as far

3    as the complaint goes at this stage.

4            So not only-- I mean, Your Honor pointed out a

5    good point that if you granted the motion, the jurisdiction

6    is still alive, the same is true in the reverse if you denied

7    the motion.  So it's just a strange procedural place to try

8    to reach the merits of a 12(b)(6) before you've decided

9    whether service has happened or jurisdiction is proper.

10           So it just doesn't seem to make sense here, Your

11   Honor.  And the burden, that's because they're continuing to

12   make these challenges.  If they want to submit to Your

13   Honor's jurisdiction and have you decide the 12(b)(6), we

14   don't have to go through any of this, we don't have to go to

15   Canada, but you just asked and they confirmed that they're

16   not waiving those challenges.  So as long as those challenges

17   are here, and the 10th Circuit says we're entitled to test

18   these claims, we would just request that the Court allow that

19   to go forward.

20           THE COURT:  Thank you.

21           MR. RITCHIE:  Your Honor, I'm sorry, it turns out

22   my calendar has an area code map in the back, which includes

23   Canadian area codes, which has Toronto, which is, you're

24   correct, Your Honor, pretty much due north of Buffalo and due

25   west of Syracuse.

1          THE COURT:  Thank you.

2          MS. RANAHAN:  Just one other point about the

3     30(b)(6), limiting it to the 30(b)(6), we just heard for the

4     first time a distinction between now two YTZ entities.  So

5     the concern is that if there was a, you know, designee that

6     only represented now what they've claimed to be, you know,

7     YTZ International as opposed to what they say the e-mail is

8     YTZ Management, that we wouldn't have the right people, and I

9     think we've identified the right people as far as Adam

10    Tobia-- Adam and their declarant, that we need to ask them,

11    at least, so the 30(b)(6) is, I don't think, sufficient.  And

12    as far as the written discovery, it's not extremely broad,

13    it's very narrowly tailored to the issues that were raised in

14    their motion.

15         THE COURT:  Thank you.

16         MS. RANAHAN:  Thank you.

17         THE COURT:  The motion for jurisdictional

18    discovery is granted.  In Wiens against Memorial Crystal,

19    55 F.3rd 1503 at 1505, the 10th Circuit Court of Appeals

20    said, "When a defendant seeks dismissal under Rule 12(b)(2)

21    for lack of personal jurisdiction, the plaintiff bears the

22    burden of proving or establishing personal jurisdiction over

23    the defendant."  So there is a burden which the plaintiff

24    here must meet.

25         In Leroy against Great Western United Corporation,

1    443 United States 173 at 180, the Supreme Court said, "The

2    question of personal jurisdiction, which goes to the Court's

3    power to exercise control over the parties, is typically

4    decided in advance of venue, which is primarily a matter of

5    choosing a convenient forum."  So the Supreme Court is

6    telling me that personal jurisdiction is a preliminary

7    matter.

8          And the 10th Circuit made that point even clearer

9    in Marquest Medical against EMDE Corporation, 496 F-- I'm

10   sorry.  Judge Kane of this Court made it even clearer in the

11   Marquest case, 496 F. Supp. 1242 at 1246, where he said,

12   "Preliminary matters, such as personal jurisdiction or venue,

13   should be raised and disposed of before a Court considers the

14   merits or quasi-merits of the controversy, and the reason is

15   a matter of judicial economy.  It's inappropriate for a Court

16   to rule on the merits if it lacks jurisdiction, because then

17   that ruling is without jurisdiction and a waste of time."

18         In Oppenheimer Fund against Sanders, 437 U.S. 340

19   at 351, note 13, the Supreme Court said, "A court may allow

20   discovery to determine facts bearing on the Court's

21   jurisdiction, and the scope of that discovery lies within the

22   Court's discretion."  And in Sazova against National

23   Institute of Standards, 282 F.3rd 1320 at 1326, the 10th

24   Circuit said, "When a defendant moves to dismiss for lack of

25   jurisdiction, either party should be allowed discovery on

1    factual issues raised by that motion, and a refusal to grant

2    discovery constitutes an abuse of discretion if the denial

3    results in prejudice to the litigant, and prejudice is

4    present when the pertinent facts bearing on the question of

5    jurisdiction are controverted or where a more satisfactory

6    showing of the facts is necessary."

7         Here we have a motion to dismiss where the

8    defendant, YTZ, says that it's not affiliated with PPX, the

9    signatory to the contract, that it wasn't even formed when

10   the contract was entered into, that YTZ has not assumed the

11   rights or duties under the contract, that YTZ is not a

12   successor to PPX and is not affiliated with it, and that

13   Tobia Adam, the signatory for PPX, although now an employee

14   of YTZ, wasn't so on November 16th, 2010, apparently the date

15   of the contract, and never had authority to bind YTZ,

16   especially when employed by PPX, and all of those issues are

17   important in deciding whether or not there is personal

18   jurisdiction over YTZ in this case.

19        The question of why-- well, I guess the question

20   of did YTZ make a payment on behalf of PPX, and if so, why,

21   is central to the determination of that.  Counsel couldn't

22   give me in any insight about that in argument this morning,

23   and so I find that discovery on that point is necessary.

24        Judge Babcock, in Ensign against BNH Rig and Tong

25   sales, 2013 Westlaw 3233614, went through the analysis saying

25

1    that, "The trial court is vested with broad discretion in

2    making such determination about allowing discovery, and a

3    refusal to grant discovery constitutes an abuse of

4    discretion."

5         He then sites Grynberg against Ivanhoe, a 10th

6    Circuit decision, which-- where I was the magistrate judge

7    making rulings on jurisdictional discovery where the 10th

8    Circuit said, "Either party should be allowed discovery on

9    the factual issues raised by a motion to dismiss based on

10   jurisdiction."

11        Here I find a more satisfactory showing of the

12   facts is necessary in the case in order for a determination

13   of the motion to dismiss based on jurisdiction and service to

14   be determined, and so discovery is necessary.  There is an

15   obligation that the discovery be narrowly tailored and

16   limited so as not to unreasonably burden a party who may not

17   be subject to the jurisdiction of the Court.

18        I have reviewed the requested discovery and, in

19   general, I find that it meets the limitation required.  I

20   will allow three depositions, YTZ-- the defendant, YTZ

21   International, by Rule 30(b)(6), Tobia Adam, the signatory on

22   behalf of PPX, and now an employee of YTZ and a central

23   figure in all of this, and Sam Dennis, the declarant in

24   support of the motion to dismiss for lack of jurisdiction and

25   failure of service of process.

1        All of those depositions seem to me to be

2   necessary.  Now, it's possible that they can be combined,

3   particularly if Adam and Dennis are designated for purposes

4   of the 30(b)(6) testimony.

5        I will require that the deposition occur at a site

6   as the parties may agree, either in Toronto, provided the

7   defendant and its testifying witnesses raise no objection to

8   American-style discovery.  If not there, then either in Los

9   Angeles, where counsel-- lead counsel are located, or Denver.

10       If there's going to be an objection raised under

11  Canadian law to the discovery, then it will be plaintiff's

12  counsels' choice as to whether the deposition occurs in Los

13  Angeles or in Denver.  If there is not going to be an

14  objection based upon some Canadian law about discovery, then

15  it will be the plaintiff's-- I'm sorry-- YTZ's choice about

16  whether the deposition is conducted in Toronto.

17       I've reviewed the written discovery, and here,

18  although in general it's okay, some of the requests for

19  production seem to me to be overbroad and must be restyled so

20  as not to be so sweeping in nature, and I have in mind

21  production request No. 1, which calls for "All documents

22  concerning PPX."  That's simply overbroad and too sweeping.

23  You may restyle that to be directed towards issues of

24  jurisdiction, but in its current form, I won't allow-- or I

25  won't require a response.

1           In production request 15, "All documents

2    concerning Tobia Adams' employment with you," again, that is

3    overbroad.  It perhaps could be limited to a time frame or to

4    certain topics, but as it is, I will not require a production

5    responsive to that.  And finally, request No. 17, "All

6    documents concerning any business conducted through your

7    website," that, again, is too sweeping.  Perhaps it can be

8    limited geographically or by time or both, but as it exists

9    now, I won't require production of those documents.

10           I am not going to shorten the discovery period.

11   The defendant has 30 days from today within which to respond

12   to the written discovery.  I'm setting a discovery cutoff for

13   jurisdictional discovery only of January 17th, 2013-- I'm

14   sorry-- 2014.  I'm granting the request for extension to file

15   a supplemental response to the motion to dismiss until

16   January 31st, 2014.

17           If there are discovery disputes of some kind which

18   slow down the discovery in a manner that I have not

19   anticipated, then I can revisit those deadlines, but I don't

20   expect there to be any discovery problems, and so I've set a

21   schedule which I think can be met, assuming that there are

22   none.  Anything else this morning?

23           MS. RANAHAN:  A couple of--

24           THE COURT:  Ms. Ranahan, yes.

25           MS. RANAHAN:  As far as-- the 30 days from today,

1   as far as the narrowing of the three that you mentioned, 1,

2   15 and 17, is that-- should we formerly issue narrowed ones,

3   you know, and under the same schedule, or can we just meet

4   and confer to narrow them in a-- and I'm just thinking of the

5   three you called out, request for production 15, 17, and 1.

6            THE COURT:  Consider them served, and I'll direct

7   that you engage in Rule 7.1(a) conference to narrow them.

8            MS. RANAHAN:  Okay.  And one more question.  Part

9   of the reply that they filed last week raised a new argument

10  to the motion to dismiss, which was, now that we've settled,

11  there's no longer a claim, I'm wondering if we can have leave

12  to file a reply to either that reply or the reply that they

13  file on January I think it was-- the 31st or something.

14           THE COURT:  Right.  That was essentially a second

15  motion to dismiss under 12(b)(6) for failure to state a

16  claim, but you're not allowed to combine a motion in a

17  response.  So I don't deem that as anything more than their

18  response on the motion for jurisdictional discovery.  If they

19  want to amend their motion to dismiss in some manner, they'll

20  have to pursue that directly and not in the form of a

21  response to a different motion.

22           MS. RANAHAN:  Okay.  Thank you, Your Honor.

23           THE COURT:  Mr. Ritchie, anything else?

24           MR. RITCHIE:  One-- one thing, Your Honor.  I

25  would-- I would just request that-- in the Court's order

1    confirming your ruling today, I assume there will be a

2    written order?

3              THE COURT:  It will be very brief.

4              MR. RITCHIE:  Well, if it's--

5              THE COURT:  The reasoning is on the transcript.

6              MR. RITCHIE:  If it is brief, what I-- what I

7    would request is that Your Honor then confirm on the record

8    now or in the minute order that is entered that the scope of

9    these depositions is limited to the issues raised by the

10   declaration of Sam Dennis and on this matter of personal

11   jurisdiction.

12             As Your Honor knows, we are very concerned that

13   this will turn into a fishing expedition, and I want to have

14   an order in place that I can rely on for purposes of

15   objecting to questions asked during the examinations, and

16   perhaps even being able to advise the deponent not to respond

17   because the question to do so would violate a court order.

18   That's one of the grounds for advising a deponent to not

19   respond to a question.

20             I would ask that we have that clear in whatever

21   order, whether it's your oral order here or in a subsequent

22   minute order, that it is limited to those issues raised by

23   the deposition-- the declaration, excuse me, of Sam Dennis

24   and pertaining to personal jurisdiction.

25             THE COURT:  I'm not sure how much help it will

1    give you, because I'm not going to say exactly what you

2    asked, but the initial discovery, which I am allowing, may be

3    directed only to the issues of personal jurisdiction and

4    adequacy of service of process.  That's going to go beyond--

5    or could go beyond the scope of what's in Mr. Dennis'

6    declaration, but it is limited to the issue of personal

7    jurisdiction of this Court and the adequacy of service.

8              MR. RITCHIE:  I think that confirmation on the

9    record will help in the event that a fishing expedition

10   ensues.  Thank you, Your Honor.

11             THE COURT:  All right.  Thank you very much.

12             MS. RANAHAN:  Thank you, Your Honor.

13             (Whereupon, the within hearing was then in

14   conclusion at 9:46 a.m.)

15

16             I certify that the foregoing is a correct

17   transcript, to the best of my knowledge and believe (pursuant

18   to the quality of the recording) from the record of

19   proceedings in the above-entitled matter.

20

21

22

23   /s/ William Woods                November 6, 2013

24   Signature of Transcriber                Date

25

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119        FAX 303-893-8305